## CITY OF GRAND FORKS v. ALLMAN.

(Circuit Court of Appeals, Eighth Circuit. April 22, 1907.)

No. 2,465.

1. MUNICIPAL CORPORATIONS—ACTIONS AGAINST FOR PERSONAL INJURY—CONDITIONS PRECEDENT.

Under Rev. Code N. D. 1899, § 2172, which requires as a condition precedent to the maintaining of an action against a city for a personal injury that a verified claim setting forth the time, place, cause, and extent of the injury shall be presented to the mayor and common council for audit and allowance within sixty days after the happening of the injury, a claim is duly presented where it is presented to and filed by the city auditor within the specified time.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1704.]

2. SAME—OBSTRUCTION IN STREETS—DUTY TO REMOVE.

It is the duty of a city whenever a dangerous obstruction appears in its streets, even though it was unauthorized, to use reasonable diligence to remove it, and what constitutes such diligence depends on the facts in each case, and especially upon the fact whether the existence and dangerous character of the obstruction was known, or in the exercise of reasonable supervision and diligence could have been known by the city in time to have caused its removal before it produced the injury complained of.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1612-1615.]

3. SAME—ACTION FOR PERSONAL INJURY—QUESTION OF NEGLIGENCE.

In an action against a city to recover for a personal injury, it was shown that, when walking at night on one of the most frequently used streets of the city, plaintiff fell over a loose plank and was injured, that some time before a water pipe had been temporarily laid in the street upon the pavement and covered to prevent freezing, and that the plank in question had been placed on the covering to keep it in place. Although it was not so placed by authority of the city, it had been there for a week or more prior to the injury. *Held*, that under such evidence the question of the city's negligence was properly submitted to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1745-1752.]

4. TRIAL—VERDICT—CONSISTENCY WITH SPECIAL FINDINGS.

A general verdict for the plaintiff in an action against a city to recover for an injury received by plaintiff by falling over an obstruction in a street, returned under instructions which authorized such verdict if the jury should find that the obstruction had been there for such length of time that the city in the exercise of reasonable care should have known of it, is not inconsistent with the answer to a special interrogatory stating that the jury were unable to find the length of time the obstruction had been there, where the evidence tended to show that it had been there for a number of days, but left the exact length of time uncertain.

In Error to the Circuit Court of the United States for the District of North Dakota.

Scott Rex, for plaintiff in error.

C. J. Murphy and Fred S. Duggan, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. Allman, the plaintiff below, brought this suit against the city of Grand Forks to recover damages for injuries sustained by him by falling over an obstruction in one of the public

streets of the city. He recovered a judgment in the Circuit Court, and the city on this writ of error challenges it in argument and brief for three reasons: (1) Because there was no preliminary presentation of the claim for damages given to the city as required by section 2172 of the Revised Code of North Dakota of 1899; (2) because there was no substantial proof of negligence on the part of the city; (3) because the verdict was in disharmony with the special findings made by the jury.

Was there a proper preliminary presentation of the claim?

Section 2172 of the Code requires as a condition precedent to maintaining a suit of this kind against the city that the claim "shall within sixty days after the happening of such injury or damage, be presented to the mayor and common council of such city by a writing signed by the claimant and properly verified, describing the time, place, cause and extent of the damage or injury." On February 6, 1905, within 60 days after the injury, which occurred on December 17, 1904, plaintiff presented to the city auditor a claim for damages corresponding to the requirements of section 2172, supra, and the same was filed by the auditor. A regular meeting of the council was to be held that evening, but for want of a quorum it was not held until February 16th, when the auditor advised the council of the filing of the claim and was instructed to return it to plaintiff with the information that, when presented according to the requirement of the statutes, it would be considered.

A brief reference to the statutes and decisions of North Dakota will serve to show that the filing of the claim with the auditor was a presentation of it to the mayor and council within the meaning of the law. The mayor and common council of each city is constituted a board of audit of such city. Section 2171, Rev. Code 1899. The city council consists of the mayor and aldermen. Section 2172, Rev. Code, 1899. Only one writing signed by the plaintiff and properly verified is contemplated by section 2172, supra. When so executed and verified, it is to be presented to the mayor and council "for audit and allowance." Section 2174. Giving due consideration to these provisions of the statutes considered collectively, we cannot agree with counsel for the city that the claim should have been presented to the mayor separately from the council. The claim manifestly should be so presented to the body authorized to audit it as to secure the attention of that body, and, when that is done, it would seem that the requirement of the statutes has been complied with. It was therefore properly presented to the mayor and common council sitting together as a board of audit. The mayor constituting one member of the council and one member of the board of audit was, to all intents and purposes, presented with the claim when it was presented to the council.

There obviously must be some way of presenting a claim which the city cannot, by its own action, thwart or prevent. If it could only be presented to the council when in session, that body, as illustrated in this case, might fail to meet during the period within which the claim was required to be presented, and thus by its own wrong work a defeat of a meritorious claim. It was sought to be presented

on February 6th, when a regular meeting of the council should have been held, but which, without any fault of the complainant, was postponed until after the statutory time for presenting the claim had elapsed. The city auditor is by law required to keep his office at the place of meeting of the council or elsewhere as directed by the council; to keep a record of the proceedings of the council; to be the custodian of the corporate seal and of all papers and records of the council; and to audit and adjust all claims and demands against the city before they shall be allowed by the council. Sections 2168, 2170, Rev. Code, 1899. It appears from these provisions and from the obvious necessity of providing an effective way of presenting a claim to the final auditing board that the auditor is clearly intended to be the medium of approach to the council, and that, when a claim is presented to and filed with him for audit and adjustment, it is presented to the council; and this, we understand, has been so held in the recent case of Pyke v. City of Jamestown, decided by the Supreme Court of North Dakota, February 15, 1906, and reported in 107 N. W. 359, wherein, after referring to the legislation just pointed out, it is said:

"The auditor is the proper official channel through which all claims for damages reach the city council and is the official representative of the city council for receiving all claims and demands against the city, including claims for personal injuries."

In the last-mentioned case a large number of authorities are cited, and the conclusion there reached forcibly commends itself to our approval.

Was there sufficient evidence of negligence to justify the jury's finding to that effect?

The streets of a city are made and maintained at public expense for the use of its citizens and others who may lawfully pass over them, and a duty is cast upon a city to exercise all reasonable supervision, care, and precaution to maintain them in a reasonably safe condition so as to avoid, as far as possible, injury to the traveling public. This general rule necessarily implies a minor one that the city must, whenever even an unauthorized, dangerous obstruction appears on its streets, use reasonable diligence to remove it. This duty is imposed upon defendant city by statute (section 2148, Rev. Code 1899, subd. 10), as well as on general principles of law. Barnes v. District of Columbia, 91 U. S. 540, 23 L. Ed. 440; District of Columbia v. Woodbury, 136 U. S. 450, 10 Sup. Ct. 990, 34 L. Ed. 472. What is such diligence depends upon the facts of each case, and particularly upon the fact whether the existence and dangerous character of an obstruction has been known, or in the exercise of reasonable supervision and diligence could have been known, by the city long enough to enable it to remove it or cause it to be removed before an accident happens.

The foregoing propositions of law are not disputed by either side, and were in substance and effect given by the learned trial judge to the jury in this case. What are the facts? Plaintiff on the evening of December 17, 1905, when dark, was walking with two friends from East Grand Forks to Grand Forks. He had just crossed the bridge connecting the two places, and was walking from the west

end of the bridge sidewalk across a corner of the public street to the main sidewalk, which did not align with the bridge sidewalk. Pedestrians customarily walked there in traveling between the two places. As plaintiff was making this crossing he fell over a loose plank which had been placed over an iron water pipe lying temporarily for a short distance on the surface of the paved street while the regular water pipe was undergoing repair. On November 24th, three weeks before the accident, the iron pipe was laid across the street and two planks, one on either side of it, were spiked down to the street to hold the pipe steady and to permit traffic over it without injuring it. Some time thereafter manure was placed over the pipe to keep it from freezing, and it was claimed by the plaintiff that the loose plank was placed there to hold the manure down. This was vigorously denied by the city. In the argument before us it seems to have been assumed as a fact that the city did not originally authorize the placing of the loose plank over the pipe line, and counsel for plaintiff concede for argument's sake that on the evidence adduced the assumption was warranted. Notwithstanding that concession, it is an indisputable fact that the plank was there on the evening in question, that it was a dangerous obstruction to the street, and that plaintiff fell over it and was injured.

The plank was there at the time of and immediately before the accident serving a purpose which reasonably implied some permanency. The city introduced several witnesses who, after showing that it was more or less probable that they would have noticed the plank if it had been there any length of time, testified that they had not seen it before the accident. Other witnesses called by plaintiff testified to the contrary. The sheriff of the county testified that he had noticed it lying there three or four days before the accident; that when he saw it it was lying somewhat crosswise of the pipe, but that he straightened it out so as to cover the pipe, remarking at the time that "somebody is going to fall down here and get hurt." Another witness testified that it had been there a week or 10 days before the accident.

Without further specification, it is sufficient to say that there was evidence from which the jury might have found that the loose plank in question had been there for at least a week before the injury.

If, now, the city in the exercise of reasonable care ought to have known of the obstruction within that time, its duty was to remove it or take the consequences. We think there was ample evidence to warrant the finding which the jury made on that issue in favor of the plaintiff. The city had many duties, which appropriately required daily supervision and inspection of its most frequented streets, imposed upon it by law. Section 2148, Rev. Code 1899. Among them was to light and clean streets and prevent and remove obstructions therefrom. The obstruction in question was on a street very frequently traveled, forming a connecting link between two important localities. It had been there several days and its dangerous condition had been the subject of comment by one of the most important officers of the county. It is difficult in cases of this kind to lay down definite rules for the determination of the issue of reasonable care. What

would import knowledge of an obstruction in one locality would necessarily be different from what would do it in another. The obligation of care and inspection is more imperative where the street is much used than where it is little used, and reasonable care might be different for each place. Considerations like these make the issue in question peculiarly appropriate for a jury. For some illustrative cases where the existence of an obstruction for a short period of time has been held sufficient to charge defendant with constructive knowledge of it reference may be made to Carrington v. City of St. Louis, 89 Mo. 208, 1 S. W. 240, 58 Am. Rep. 108; Straub v. City of St. Louis, 175 Mo. 413, 75 S. W. 100; Mayor v. Johnson, 84 Ga. 279, 10 S. E. 719; Larson v. Grand Forks, 3 Dak. 307, 19 N. W. 414. In the last-mentioned case it is said:

"Whether the corporation had notice or was negligently ignorant is a question of fact for the jury. Notice will be inferred if the defect in the street or sidewalk has existed for a considerable length of time or from the fact that the defect had existed so long as to render it notorious."

See, also, to the same effect, Thompson on Negligence, 761.

Was the general verdict inconsistent with the special findings?

The Code of North Dakota empowers the courts of that state to require the jury to make special findings of fact, and provides that, if they are inconsistent with the general verdict as found, a judgment as required by the special verdict shall be entered. The court below pursued that practice and submitted to the jury the following questions, to which answers were made as stated after each question:

"(1) How many planks were used in the structure in question when it was put down on November 24, 1904? Ans. Two.

"(2) Were such planks spiked down to the pavement? Ans. Yes.

"(3) Was the plank which tripped the plaintiff one that was laid November 24, 1904, or one that was subsequently laid? Ans. Subsequently laid.

"(4) If you find in answer to question 3 that the plank which tripped plaintiff was placed subsequent to November 24, 1904, for what time previous to the accident had it been continuously at the point of the accident? Ans. We don't know."

The contention is that the finding that the jury did not know how long the plank which tripped plaintiff had been located there is inconsistent with the general finding under the court's charge to the effect that it had been there continuously for such a time that the city in the exercise of reasonable care should have discovered it. We fail to discover any inconsistency in this. The jury under the evidence gave a very proper answer to the last question propounded to them. The proof rendered an accurate answer difficult. The witnesses placed the time variously from four to ten days. It does not follow that the jury could not properly find that the plank had been there long enough to charge the city with knowledge of its existence merely because it was unable to definitely and accurately tell the number of days it had been there.

There is an assignment of error predicated on the court's refusal to instruct a verdict for defendant based on the grounds that there was no proof of defendant's negligence, but was proof of plaintiff's contributory negligence. Proof tending to show defendant's negligence has already been considered, and it is sufficient to say that in

our opinion the issue of contributory negligence was properly left to the jury, and its finding thereon is conclusive. The case was tried below with great fairness and impartiality, which specially characterized the charge to the jury, and we find no reason to attribute the result to either prejudice or sympathy, as suggested by defendant's counsel.

The judgment should be affirmed.