### JOHN L. McKINNEY, Respondent, v. GEORGE CARSON, Appellant.

No. 1978. Decided January 14, 1909 (99 Pac. 660).

1. APPEAL AND ERROR—REVIEW—GRANTING NEW TRIAL. Where the record contains only the verdict and motion for a new trial, the court's action in granting a new trial is not reviewable, since, under the express provisions of Comp. Laws 1907, sec. 3298, the court for certain reasons could have granted a new trial on its own motion. (Page 184.)

2. PUBLIC LANDS—GRANTS TO STATE—RELIEF TO BONA FIDE CLAIMANTS—TRESPASS. Where the state, entitled under its enabling act to a grant of unoccupied and unclaimed nonmineral lands, made a selection, if the lands were of the character granted, the Secretary of the Interior could not defeat the state's rights by rejecting the selection, his approval being merely evidence that the lands selected were subject to the grant; and hence where the state contracted to sell land selected, and the Secretary of the Interior afterward rejected the selection, which was canceled with the state's consent, and the purchaser acquiesced and surrendered possession, the purchaser had exclusive right to pos-

session until the cancellation, it not appearing that the land was mineral land, and the contract was admissible in evidence to show the purchaser's right of possession prior to cancellation of the selection, as against another who entered thereon and damaged the purchaser's property. (Page 186.)

3. Public Lands—Grant to State—Right of Possession. The state having the exclusive right under its enabling act to select unoccupied and unclaimed nonmineral lands, the right of selection carried with it the right to take and continue in possession, at least until some one with a better right claimed the lands or until they were found to be mineral lands, and hence, where the state transferred its right to another, the other could exclude mere intruders who had no right in the land until the national government asserted its superior rights, the state's selection being set aside. (Page 187.)

4. Damages—Pleading—Special Damages. The general rule is that all the consequences that necessarily and ordinarily flow from the wrongful acts described in the complaint may be proved under a general allegation of damages, but consequences which are the natural, but not the necessary and ordinary, result of such acts, must be specially alleged. (Page 189.)

5. Damages—"General Damages"—"Special Damages." The only difference between general and special damages is that general damages are the necessary and usual result of the acts described in the complaint while the special damages need not be but must only be the proximate result of and traceable to such acts. (Page 190.)

6. Pleading—Sufficiency. In every pleading the opposite party is entitled to notice of what the proof will be directed to, and the notice must appear from the pleading.1 (Page 190.)

7. Damages—Pleading—Scope of Proof. Where the only allegation is a cause of action in the complaint in regard to damages from the mingling of defendant's bucks with plaintiff's ewes was that the ewes brought forth lambs of an inferior quality at an unseasonable period, evidence was inadmissible to show that plaintiff hired extra men to care for the ewes and lambs during the time the ewes dropped their lambs, that he expended certain sums to purchase lumber for sheds to protect the ewes and lambs, that he purchased hay and straw to bed and feed them, and that all the expenses were necessarily incurred because of the wrongfully mingling of the bucks with the ewes, since it went beyond the scope of the allegation of damages. (Page 191.)

---

1 Pugmire v. Oregon S. L. R. Co., 33 Utah 27, 92 Pac. 762, 13 L. R. A. (N. S.) 565.

8. DAMAGES—PLEADING—SPECIAL DAMAGES. The matters sought to be proved were in the nature of special damages which should have been pleaded. (Page 191.)

9.. EVIDENCE—ADMISSIONS—OFFER OF COMPROMISE. Under the express provisions of Comp. Laws 1907, sec. 3217, if a party serve on the adverse party a writing offering to permit the adverse party to take judgment for a specified sum and the offer is rejected, the writing is privileged and cannot be used as evidence. (Page 191.)

10. EVIDENCE—ADMISSIONS—OFFER OF COMPROMISE. Under the general rules of evidence a mere offer of money or anything of value, either oral or written, in settlement of a pending controversy, ordinarily cannot be used in evidence as an admission of liability. (Page 191.)

11. TRIAL—RECEPTION OF EVIDENCE—RESTRICTION TO CERTAIN PURPOSE. Where letters are offered which are admissible to prove a fact other than the offer, the jury should be told not to consider them except for the purpose for which offered. (Page 192.)

12. TRIAL—RECEPTION OF EVIDENCE—RESTRICTION TO CERTAIN PURPOSE. Where evidence admitted is competent only for a special purpose, it is the duty of counsel and not of the court to see that it is limited to the purpose for which it is admissible.[2] (Page 192.)

13. DAMAGES—SPECULATIVE DAMAGES — "GENERAL DAMAGES" — "SPECIAL DAMAGES." In any case predicated upon a wrong, a person may be entitled to recover general damages which are the necessary and usual results of the acts complained of, and special damages which are not the usual and ordinary result but as directly traceable to the wrongful acts complained of and result therefrom, but all other damages are too remote. (Page 193.)

14. DAMAGES—INSTRUCTIONS—GENERAL AND SPECIAL. If both general and special damages are claimed, the court should by its charge limit both damages to such as are proximate and not remote, and should indicate plainly the limits beyond which damages cannot be allowed. (Page 193.)

15. TRIAL—INSTRUCTIONS—RIGHT OF PARTY. A party has the right to have the court instruct the jury upon the law on every material issue in the case in support of which there is some evidence. (Page 193.)

---

[2] Groot v. Oregon S. L. R. Co., 34 Utah 152, 96 Pac. 1019; State v. Greene, 33 Utah 497, 94 Pac. 987; Loofbourow v. Utah L. & R. Co., 33 Utah 480, 94 Pac. 981.

16. APPEAL AND ERROR—ASSIGNMENT OF ERROR—SUFFICIENCY. An exception and assignment of error that the court erred in refusing requests as offered would not raise the question of the court's error in failing to charge upon a material issue in the case, since, if the requests did not correctly state the law applicable to the evidence, it was not error to refuse them.   (Page 193.)

APPEAL from District Court, Fourth District.  *Hon. J. E. Booth*, Judge.

Action by John L. McKinney against George Carson. Judgment for plaintiff, and defendant appeals.

REVERSED AND REMANDED.

*Messrs. Corfman & Rydalch* for appellant.

*Messrs. Booth & Cluff* for respondent.

FRICK, J.

This is an action for damages to personal property. Respondent, in substance, for a first cause of action, alleged that during the year 1906 he was the owner and in possession of certain grazing lands, describing them; that during the year 1906 he was the owner of a large number of sheep, including about 1,400 ewes, all of which were herded or kept upon the lands aforesaid; that during the month of September, 1906, the appellant, as the owner, was in charge and control of about 500 buck sheep, which said appellant wrongfully, willfully, and negligently permitted to enter upon said grazing land and permitted them to mingle with respondent's ewe sheep, by reason of which 234 head of said ewes became pregnant and "brought forth lambs of an inferior quality and in an unseasonable period, late or premature," to the damage of respondent in the sum of $900. For a second cause of action it is in substance alleged that during the months of August and September, 1906, the appellant wrongfully, willfully, and negligently permitted a large number of the buck sheep mentioned in the first cause of action

to enter upon the grazing lands referred to in said first cause of action, and permitted said bucks to eat and tread down the grass and other vegetation on said land, to the respondent's damage in the sum of $100. The appellant answered the complaint, and, after admitting that he was the owner and in charge and control of the 500 bucks in the fall of 1906,.in effect denied the other allegations contained in said first cause of action, and affirmatively alleged that he had a right to enter upon and herd his sheep upon the lands in question; and further in substance alleged a settlement by way of accord and satisfaction of the alleged damages claimed by respondent. Appellant practically set up the same defense to the second cause of action. Upon these issues a trial was had to a jury, which returned the following verdict: "We, the jury impaneled in the above-entitled cause, find the issues on the first cause of action in favor of the plaintiff and assess his damages at $——, and in favor of the plaintiff on the second cause of action and assess his damages at $30; plaintiff to return to the defendant the 32 head of ewe sheep, or the value thereof of $5 per head." Respondent filed a motion to set aside the verdict and for a new trial, upon the sole ground that the "verdict is against the law." It is now urged that the court erred in setting aside said verdict and in granting a new trial.

If we should assume the power to review the action of the trial court in granting a new trial (a question we do not decide), yet, in view of the record in this case, there is nothing before us upon which we can base an intelligent review. There is nothing before us except the verdict and the motion for a new trial. There may have been several reasons which induced the court to grant a new trial. In view of the provisions contained in section 3298, Comp. Laws 1907, the court, for the reasons there stated, could have granted a new trial on its own motion, and there is nothing before us to indicate that the court did not do so. No error, therefore, is made apparent, and hence this contention cannot be sustained.

Upon the second trial of the case the jury found the issues in favor of the respondent, and the court entered judgment thereon, from which this appeal is prosecuted.

The first assignment of error relates to the ruling of the court in admitting in evidence, over appellant's objection, a certain written instrument which was offered for the purpose of proving respondent's right to the possession of the grazing lands referred to in the complaint. The instrument in question purported to be a contract between the State of Utah and one Cravens, whereby the State of Utah agreed to sell, and said Cravens agreed to purchase, the lands in question at a stipulated price per acre, the purchase being made in accordance with the laws of this State relative to the sale of lands granted by the United States to the State of Utah by the enabling act approved July 16, 1894, c. 138, 28 Stat. 107. Mr. Cravens assigned all of his rights under said contract to respondent, and we shall hereafter treat the matter as though respondent had been the original purchaser under said contract. Pursuant to said contract respondent paid or deposited with the proper officer of the State the first payment, amounting to twenty-five cents per acre, and went into possession of and occupied the lands in question for the purposes aforesaid. The lands in question had been selected by the State of Utah prior to entering into the contract of sale as a part of the lands due the state under the grant contained in the enabling act. The selection of lands by the state, within which the lands in question were included, was filed in the United States land office on May 27, 1902, and approved by said office June 9, 1902. Thereafter, on September 27, 1906, the lands in question, selected by the State as aforesaid, were rejected by the Secretary of the Interior at Washington, which rejection was indorsed on the back of the contract in question. Both the State of Utah and the respondent consented to the rejection, and the state returned to him the money deposited by him, and he received it and relinquished his right to the land. The precise time at which the State and respondent were apprised of the ac-

tion of the Secretary of the Interior does not appear, but it was some time after the 27th of September, 1906. In view of the foregoing it is urged that the contract was inadmissible as evidence as showing respondent's rights to the land in question, for the reason that no rights were or could have been conferred by the contract. It is asserted that since the selection made by the state was rejected by the Secretary of the Interior, the state never had any right or title to the land, and if the state had none it could confer none. It will be observed that the selection made by the state was approved by the local land office June 9, 1902, and that respondent went into possession under a contract from the state. The state, therefore, was acting under a selection made by it which had been duly filed and approved by the local land office. In a very recent case, entitled *Brigham City v. Rich,* 34 Utah 130, 97 Pac. 220, we held that a grant to the state of Utah under the enabling act was a grant *in praesenti;* that a selection duly made by the state and filed and approved by the Secretary of the Interior vested the title in the State of Utah from the date of the approval of the enabling act. We further in effect held that, if the lands selected by the state were not mineral and were located within the State of Utah, the Secretary of the Interior was powerless to defeat the rights of the state, because the grant was not dependent upon his act of approval. In other words, the refusal of the Secretary of the Interior to make the approval did not necessarily affect the passing of title, but his approval was evidence of the facts that the lands were of the character designated in the enabling act and were subject to the grant; if, therefore, the selected lands in fact were of the character granted in the enabling act that then the Secretary could not, by a mere rejection, defeat the rights of the state, since the enabling act conferred no such power upon him. If our conclusions in that case are sound, it follows that the State of Utah acquired such a right in the lands in question that it could agree to sell them to one desiring to purchase unless the lands were mineral lands. There is

no claim that the lands in question were such, nor is it contended that the selection made by the state was rejected for that reason. From anything that is made to appear, therefore, the state could have insisted upon its right to the land in question, and the respondent could likewise have done so. The mere fact that the State and the respondent acquiesced in the action of the Secretary of the Interior, whether such action was well founded or not, can make no difference so far as the appellant is concerned. The respondent had the exclusive right to the possession of the land until the selection made by the state was canceled with its consent, and until respondent acquiesced in the cancellation of the contract and surrendered up possession.

But we think the respondent had the right of possession as against the appellant, who was a mere intruder, upon still another ground. Under the enabling act the state certainly had the exclusive right to select unoccupied and unclaimed non-mineral lands. The right of selection carried with it the right to take possession and to continue in such possession, at least until some one with a better right claimed the lands, or until they were found to be mineral in character. If the state had this right, it could transfer the right of possession to another, and the person who obtained it would certainly have the right to exclude mere intruders who had no right in or to the land whatever. The right of possession would continue until the United States insisted upon its higher right, that of true owner. As against appellant, therefore, who was a mere intruder without any rights, the respondent's rights must prevail. Our conclusion, therefore, is that the court did not err in admitting in evidence the land contract as evidence of respondent's right of possession as against appellant.

The next assignment to be noticed refers to the admission of certain evidence, over the objection of appellant, with regard to particular items of damages which respondent claims to have sustained by reason of the wrongful acts complained of in the first cause of action. In the complaint

the only allegation with regard to the damages sustained by respondent is that, by reason of the mingling of the buck sheep with the ewes, "about 234 head became pregnant with lamb and in consequence thereof they brought forth lambs of an inferior quality and in an unseasonable period, late or premature." Counsel for appellant at the proper time and in the proper way, by special demurrer, made objections to the generality of this allegation, and asked that it be made more specific and certain. Respondent's counsel, however, resisted the demurrer, and the court overruled it. At the trial, after proving the usual period of gestation for sheep, the respondent, under the foregoing allegation, offered evidence to prove that the respondent had employed extra men to take care of the ewes and lambs during the time the ewes dropped their lambs, which was during the months of January, February, and March; that ninety-six head of the lambs died; that respondent had expended certain sums of money to purchase lumber to build sheds for the protection of the ewes and lambs, and had purchased hay and straw to feed and bed them during the lambing season and for some time thereafter; that all of the foregoing items of expenses were necessarily incurred by reason of the wrongful mingling of the buck sheep with the ewes, which caused them to give birth to lambs at an unseasonable period within which special or extra protection, care, attention, and feed had to be provided for the ewes and lambs. The objection to the evidence is not based upon the ground that the matters claimed above are not proper items of damages, but the objection was, and the contention now is, that the evidence in that regard was not relevant to the issues presented by the pleadings, and hence not admissible. It may be that respondent is not entitled to the first cost of the lumber purchased by him as his measure of damages, but this question is not presented, and we express no opinion upon it. The only allegation in the first cause of action with regard to the damages is that the ewes brought forth lambs of an inferior quality at an unseasonable period. The natural and obvious inference to be de-

duced from this statement is that the lambs were of inferior quality and hence of less value than lambs of a better quality. That they were born in an unseasonable period no doubt may affect their quality and hence their value. Nothing is stated that any of them died by reason of their unseasonable birth, nor is there any allegation that the respondent suffered any damage or inconvenience by reason of any effect the unseasonable birth of the lambs had upon the ewes, nor that they required any special care or attention. If we assume that respondent is entitled to recover for all these matters as traceable to the wrongs complained of, still he cannot recover for such matters when he has expressly confined his allegations for damages to the inferior quality of the lambs because born at an unseasonable period. It is not even intimated that the lambs were inferior because of the inferior grade or quality of the bucks, but the only inference is that the lambs were of inferior quality because they were conceived and born at an unseasonable period. While the objection may be good that the damages referred to above are special, and therefore, in order to admit the evidence, should have been specially alleged, still the broader objection that the evidence was not admissible because of the restricted allegation with regard to damages is certainly good. The question, therefore, is not merely what are general and what are special damages, but it is rather whether a party may extend the evidence beyond the scope of his allegations. We are clearly of the opinion that the court permitted this to be done in this case. The general rule no doubt is that all the consequences that necessarily and ordinarily flow from the wrongful act or acts described in the complaint may be proved under a general allegation of **4** damages, and that consequences which are the natural but not the necessary and ordinary result of such act or acts must be specially alleged in order to entitle the complaining party to prove them at the trial. The cases of *Croco v. O. S. L. Ry. Co.,* 18 Utah 311, 54 Pac. 985, 44 L. R. A. 285, and *North Point Irr. Co. v. Canal Co.,* 23 Utah 199, 63 Pac.

812, cited by counsel for respondent, while containing expressions from which an inference might be drawn that it was intended to lay down a different rule, is more apparent than real. In both of those cases general and special damages are recognized, and the rule that special damages must be pleaded is adhered to. If, therefore, those cases should be construed as holding, or contended by respondent's counsel, that all consequences which are traceable to the wrongful act or acts stated in the complant can be proved under a general allegation of damages, then it would have been needless to state that special damages must be alleged if it is desired to recover them. All damages, whether general or special, must be directly traceable to the wrongs complained of. The only difference between general and special damages is that the former are the necessary and usual result of the acts described in the complaint, while the latter need not be so, but must only be the proximate result of and traceable to such act or acts. In every pleading the opposite party is entitled to notice of what the proof will be directed to, and this notice must appear from the pleading. This principle is well illustrated in the recent case of *Pugmire v. O. S. L. Ry. Co.,* 33 Utah 27, 92 Pac. 762, 13 L. R. A. (N. S.) 565. A party seeking to recover damages for the wrongful acts of another must ordinarily set forth the wrongful act or acts and describe the injury sustained, whether to person or property, and all the consequences which necessarily and usually result from the acts and injuries set forth and described may be proven as general damages. If however, a recovery is sought for consequences that are not the necessary and usual result of the acts and injuries set forth and described, then such consequences must be pleaded, and the damages that arise therefrom are denominated special damages. Of the necessary and usual consequences the opposite party has notice because they necessarily arise, but of those that do not so arise he must have notice because they may or may not exist. It will be readily seen that a party may limit his statement of the wrongful acts or his descrip-

tion of injuries, or both, and, if he does so, his proof will be limited to the acts set forth or the injuries described. But when this occurs, the principle of general or special damages and the rule governing them is not necessarily involved. The *Croco Case,* like many similar cases, relates to the question of whether the wrongful acts described in the complaint were those attempted to be proved rather than to the question of special damages. The question in this case, however, covers both the defects above referred to, namely, that the matters stated in the complaint **7, 8** were restrictive, and what was sought to be proved by the evidence objected to was in the nature of special damages, which should have been alleged in order to notify the appellant of what he was expected to meet at the trial. The court, therefore, erred in admitting the evidence.

Error is also predicated upon the ruling of the court in admitting in evidence, over the objection of appellant, the following letter written by him to respondent just before this action was commenced and pending the negotiations for a settlement between them: "In reply to yours of the 13th, will say have agreed to give you two hundred dollars more, besides the yearling ewes. Now, Mr. McKinney, this will be every cent I will give you. Now, if this will not pay you the damages, you had better start suit. If you want the money, will send you check." Counsel for appellant urge that this letter was in the nature of a privileged communication, because it was written pending the controversy, and was a mere offer of a stated sum of **9, 10** money as a compromise. Under our statute, section 3217, Comp. Laws 1907, if it had been a direct offer to permit the opposite party to take judgment for a specific amount and the offer had not been accepted, the writing would have been privileged and could not have been used as evidence. This, we think, is likewise true under the general rules of evidence with regard to all offers of compromise where such an offer, either oral or written, is a mere offer of money or anything of value which is offered

in settlement of the pending controversy. Ordinarily such an offer cannot be used as an admission of liability. (2 Wigmore on Evidence, sec. 1061; 1 Elliott on Evidence, sec. 646.) By reference to the foregoing letter it is clear that it was a mere offer by respondent of a specific sum of money in settlement of his demand. The letter, therefore, was not admissible as an admission of liability. But it is urged by counsel for respondent that the letter was not offered as an admission of liability, but was offered on cross-examination of appellant to affect the credibility of his testimony. If this was its purpose, and there were some fact or facts stated in the letter which was contrary to appellant's testimony, it was proper to admit the letter as evidence to prove such fact. But we cannot see anything in this letter which, when applied to the evidence as it now stands, makes it admissible for any purpose. We are of the opinion, therefore, that, in view of the record, the court erred in admitting the evidence. A jury is very apt to seize upon such an offer as an admission of liability upon the part of one making it, when the law does not authorize such offers to be considered for that purpose. When, therefore, letters are offered which are admissible for **11, 12** the purpose of proving a fact other than the offer, the jury should be told not to consider them except for such purpose. In such a case, however, it is not the duty of the court to guard against error, but it is counsel's duty to do this. For the rules of procedure in this regard, see *Groot v. O. S. L. Ry. Co.,* 34 Utah 152, 96 Pac. 1019; *State v. Greene,* 33 Utah 497, 94 Pac. 987; *Loofbourow v. Utah L. & R. Co.,* 33 Utah 480, 94 Pac. 981.

The giving of the instruction relative to the measure of damages is also assigned as error. The instruction complained of, in view of the State of the pleadings, is too broad. In any case predicated upon a wrong a party may be entitled to recover (1) general damages and (2) special damages. The former are such as are the necessary and usual results of the acts complained of, and the latter are

such as are not the usual and ordinary results, but such as are directly traceable to the wrongful acts complained of and result therefrom. All other damages are too remote. If, therefore, both general and special damages are claimed, the court, in its instructions, should limit both the former and the latter to such damages as are proximate and not remote. The court should, in plain terms, indicate to the jury what the limits are beyond which they cannot legally go, and within those limits, in view of the circumstances disclosed by the evidence, permit them to fix the amount the injured party should recover. The jury should be told, however, that all damages that are to be allowed must in any event be the proximate result of the wrongful acts set forth in the complaint. The court practically fixed no limitation whatever, but permitted the jury to determine the limits for themselves. While we would not be inclined to reverse the case for this error if it stood alone, in view of the whole record, we nevertheless, in view that the case must be reversed upon other grounds, have deemed it best to refer to the matter so as to avoid a similar error upon another trial.

Another assignment of error is that the court erred in refusing to give certain instructions requested by respondent. In his answer appellant pleaded a settlement in the nature of accord and satisfaction. Appellant introduced some evidence at the trial in support of this defense, and respondent also introduced some in opposition thereto. Appellant offered certain requests upon this issue which the court refused. The appellant excepted, and now urges that the court erred in refusing his requests. Appellant had the undoubted right to have the court instruct the jury with regard to the law upon every material issue in the case in support of which there was some evidence. The exception and error assigned, however, go no farther than the refusal to instruct as requested. The requests offered by appellant, in view of the issue and

the evidence relating thereto, were too broad, as a mere cursory examination of them will disclose. The error assigned is that the court erred in refusing the requests as offered, and, if these did not correctly state the law applicable to the evidence, the court committed no error in refusing them.

The assignment with regard to the refusal of the court to instruct the jury upon the question of respondent's rights under the contract of purchase, we have, in effect, disposed of by what we have said upon that subject, and it therefore requires no further attention. The court did not err in refusing this request.

It follows from what has been said that the judgment should be, and it accordingly is, reversed, and the cause is remanded for a new trial with directions to the court to permit the parties to amend their pleadings if they so desire, and to proceed with the case in accordance with the views herein expressed; appellant to recover costs on appeal.

STRAUP, C. J., and McCARTY, J., concur.