[No. 1997, Feb. 25, 1918.]
MAKEMSON v. DILLON et al.

SYLLABUS OF THE COURT.

1. During the interim between the selection of indemnity on lieu lands by the state and the approval of the selection by the Secretary of the Interior, under the provisions of the Enabling Act of Congress (Act Cong. June 20, 1910, c. 310, 36 Stat. 557), the state has such an interest in the lands covered by the selections as entitled it to lease the same, and the lessee may maintain an injunction against trespassers upon the same.      P. 304

2. Sections 4636 and 4637, Code 1915, held not to apply to lands covered by indemnity on lieu selections by the state.      P. 311

3. Sections 5190, Code 1915, requires lands to be leased by the state at not less than 2 per cent. of their true value, to be determined by appraisement. The minimum purchase price fixed in section 10 of the Enabling Act for lands selected by the state and lying east of a certain prescribed meridian is $5 per acre. This provision, however, is not controlling upon the rental value of these lands. The appraised value of these lands may be less than the minimum price prescribed by Congress in the Enabling Act, and as, in this case, no showing was made by the appellants that the lands were worth the minimum purchase price, they are not in a position to question the action of the state land commissioner in leasing the lands at 5 cents per acre per annum.      P. 312

4. The word "owned," as used in section 5189, Code 1915, is held to apply to any lands in which the state has any right or interest.      P. 312

5.   Findings of fact, which are supported by substantial evidence, cannot be successfully questioned in this court.
P. 313

6.   A proposition, not argued in this court, will not be considered.                                              P. 313

7.   Section 5226, Code 1915, which makes it a criminal offense to use for any purpose any land belonging to the state, unless it is leased or purchased, furnishes no remedy to a lessee, and is not exclusive of the right to injunction for intentional trespasses upon such leased lands.     P. 313

8.   The words "subject to the approval," as used in Enabling Act, § 11, providing that all lands granted in quantity or as indemnity shall be selected under the direction and subject to the approval of the Secretay of the Interior, are not to be regarded as giving him direction to arbitrarily refuse a selection for no reason at all, but are to be understood to mean that he shall investigate and pass upon and render judgment as to whether the lands selected are within the terms of the grant, and, if so, it is his duty to list them to the state.                                           P. 311

Appeal from District Court, Roosevelt County; McClure, Judge.

Action for injunction by Harry Makemson against A. Roscoe Dillon and others.  Judgment for plaintiff, and defendants appeal.  Affirmed.

J. E. Pardue, of Ft. Sumner, for appellants.

A. B. Renehan, of Santa Fe, amicus curiæe, for the State.

K. W. Edwards, of Ft. Sumner, and G. L. Reese, of Portales, for appellee.

## OPINION OF THE COURT.

PARKER, J.  Appellee brought this action for an injunction against appellants, to restrain them from cutting and breaking appellee's fences, and driving, herd-

ing, and grazing their cattle and live stock upon certain lands so inclosed. It appears that the state had filed application in the United States land office at Ft. Sumner, N. M., for the selection, as indemnity or lieu lands, of all of the premises in question, except a small portion thereof, which was held in private ownership by the appellee, and except another small portion thereof which he held as lessee of some third persons, which said application of the state had been duly allowed by the register and receiver of said land office. It further appears that thereafter the appellee entered into contracts with the state of New Mexico whereby he leased the said lands from the state for the period ending September 30, 1920, for the purpose of pasturing and grazing said lands, and for all purposes incident thereto. He went into possession of the said lands, and fenced the same, and grazed cattle and horses thereon. It further appears that thereafter the appellants committed a series of intentional trespasses upon the said lands, by driving, herding, and grazing their cattle and live stock thereon.

[1] A preliminary injunction was awarded by the court against the appellants, and upon a return to the order to show cause why the injunction should not be made permanent a hearing of the facts was had before the court, and the injunction was made permanent. The appellants defended upon the ground, principally, that although the lands in question had been applied for by the state, and the application had been allowed by the local land office, the said applications were still pending before the secretary of the interior, and had not yet been approved by him. These lands were applied for by the state under the provisions of the act of Congress enabling the people of New Mexico to form a state government. 36 Stat. 557. The pertinent provision of that act is contained in section 11, and is as follows:

"That all lands granted in quantity or as indemnity by this act shall be selected, under the direction and subject to the approval of the Secretary of the Interior, from the surveyed, **unreserved, unappropriated, and** nonmineral

public lands of the United States within the limits of said
state.   *   *   *''

The indemnity lands referred to in section 11 are lieu
lands, to take the place of such of sections 2, 16, 32, and
36 as might be lost to the state by reason of being min-
eral, or having been sold, reserved, or otherwise appro-
priated or reserved by or under the authority of any
act of Congress, or where they were wanting or frac-
tional in quantity, or where settlements thereon with a
view to pre-emption or homestead or improvement there-
of, with the view to desert land entry before the survey
thereof in the field, as provided in section 6 of said en-
abling act.

Counsel for appellants takes the position that an in-
demnity selection, such as the one in this case, requir-
ing the approval of the Secretary of the Interior, gives
to the state no title nor rights in the land until such ap-
proval has been had.   He relies upon several cases which
will be examined.   He cites Clemmons v. Gillette, 33
Mont. 321, 83 Pac. 879, 114 Am. St. Rep. 814.   This was
a trespass case quite similar to the case at bar in facts.
It differs radically from the case at bar, however, in an
important and controlling feature.   In that case the
lands were unsurveyed, and the state of Montana had
assumed to lease to the plaintiff an unsurveyed school
section.   The plaintiff had obtained a lease and had been
in possession of the school section for two years, but
when the controversy arose his lease had expired by rea-
son of the fact that the state refused to renew the same.
This left the plaintiff with no other right to the posses-
sion than such as he obtained by virtue of his inclosure
made under the lease from the state for the two pre-
ceding years.   Incidentally the court discussed the na-
ture of the right of the state in school sections prior to
the public surveys.   The court correctly determines that
in a case of that kind, by reason of the fact that no par-
ticular land is identified by survey, the state can have
no power to either convey the fee or to grant a lease,
there being no identification of the subject matter, and

the court cites U. S. v. Montana L. & M.. Co., 196 U. S. 573, 25 Sup. Ct. 367, 49 L. Ed. 604, which supports the doctrine announced in the Montana case.

In Wisconsin Central Railroad Co. v. Price County, 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687, the question was presented to the Supreme Court of the United States as to when the title to lieu lands passed from the government to a railroad grantee, and as a consequence when the same lands became subject to taxation by the state. The court cites and quotes from Witherspoon v. Duncan, 4 Wall. (71 U. S.) 210, 18 L. Ed. 339, to the effect that, where lands have been entered at the land office and a certificate of entry obtained, they become the private property of the entryman; the government holding merely the naked legal title in trust for him. In that case the court distinguishes between grants of lands to railroads of certain alternate sections within certain specified place limits and those which are denominated lieu lands, and points out that in such cases, by reason of the provision of the statute requiring the approval of the Secretary of the Interior to such lieu selections, no title vests in the grantee until such approval has been had. The basis for the distinction seems to be that the Secretary of the Interior is charged with the duty of judicially determining whether there were any deficiencies in the lands granted which were to be supplied from indemnity lands, and, in the second place whether the particular indemnity lands selected could be properly taken for those deficiencies, and the court says:

"Until the selections were approved there were no selections in fact, only preliminary proceedings taken for that purpose; and the indemnity lands remain unaffected in their title."

This is a leading case on the subject. It is to be observed, however, in this connection, that the question in that case was as to when the title passed from the government to the railroad, so as to be subject to taxation

—an entirely different question from the one in the case at bar, as will be hereafter pointed out.

Counsel for appellee relies upon Weyerhaeuser v. Hoyt, 219 U. S. 380, 31 Sup. Ct. 300, 55 L. Ed. 258, in which the court in an exhaustive opinion held that, during the interim between the applications for lieu lands and the approval by the Secretary of the Interior, the lands were withdrawn from entry, so that no rights could be acquired under the Timber and Stone Act by a person making claim subsequent to the application of the railroad company for the lieu selections. In Northern Pacific Railroad Co. v. Houston, 231 U. S. 181, 34 Sup. Ct. 113, 58 L. Ed. 176, it is held that lands embraced in the list of indemnity selections filed by the railroad company with the Land Department, and subsequently approved by the Secretary of the Interior, were not subject to entry or purchase under the federal land laws during the interim between the date of filing and the date of such aprroval.

Olive Land & Dev. Co. v. Olmstead (C. C.) 103 Fed. 568, is also cited and relied upon. Counsel on both sides, it seems to us, have overlooked an important and controlling consideration in the discussion of this case. The question in this case is not whether the title to school indemnity lands has passed to the state prior to the approval of the selections by the Secretary of the Interior. We think it may be conceded that such title has not passed to the state. The question in this case, however, is as to what interest the state acquires under its lieu selections and during the interim between the selections and the approval by the Secretary of the Interior. That the state acquires some beneficial interest in the property seems apparent.

The only two cases which we have found which discuss the specific question involved in this case are two cases from Utah. In Brigham City v. Rich, 34 Utah, 130, 97 Pac. 220, Brigham City had commenced the construction of an electric light plant; the water to generate such power had to be conducted through a pipe line,

and a portion of such pipe line had been constructed up to a point where it became necessary to cross the land described in the complaint. The city was unable to agree with the defendant and brought condemnation proceedings. The defendant, Rich, entered into an agreement with the state of Utah whereby he made application for the selection by the state of the land and paid the required fees. On the same day the state made the selection under the grant to it by the United States, which application was approved by the register and receiver of the United States land office at Salt Lake City. Immediately after making the agreement with the state, Rich entered into possession of said lands. The selection was afterward approved by the Secretary of the Interior, but had not been approved when the proceeding was commenced. Section 13 of the Enabling Act of Utah (Act Cong. July 16, 1894, c. 138, 28 Stat. 107) is in almost the identical language of the portion of section 11 in our Enabling Act above quoted. It requires the selections to be made under the direction of the Secretary of the Interior. Ours differs from the Utah section only in one particular, and that is that ours reads "under the direction and subject to the approval of the Secretary of the Interior." We do not regard this variation as important. The court says:

"The contention of appellant's counsel is that under the facts as found by the court the title and ownership of the lands in question were in the United States on the 30th day of October, 1902, when this proceeding was commenced; that the title to the same did not pass out of the United States unil April 30, 1903, when the Secretary of the Interior approved the selection thereof by the state of Utah; and that the doctrine of relation, with regard to the passing of the title, cannot be invoked in this case. Upon the other hand, counsel for Brigham City claim that the grant made by the United States was a grant in praesenti; that when the state of Utah made the selection of the lands, which was approved by the Secretary of the Interior, the title thereto vested in the state of Utah, as of the date of the passage of the Enabling Act, or, at least, as of the date the state made the selection of the land. * * * It seems to us that the grant contained in section 12 of the Enabling Act was one in praesenti, and was based upon

Makemson v. Dillon, 24 N. M. 302.

three conditions, namely: (1) That the lands shall be
selected from unappropriated public lands of the United
States; (2) that they shall be selected within the limits
of the state of Utah; and (3) that they shall be nonmineral
in character. * * * The phrase that the lands 'shall
be selected under the direction of the Secretary of the In-
terior,' as we view it, was not a condition upon which the
grant was made, but merely one of the means by which the
lands should be identified and the grant made effective
as to any particular parcel. As we have seen, the grant
consisted of a specific number of acres, and within specified
limits. The words of the grant are that 'the following
grants of land are hereby made to said state.' This is not
a promise or agreement to grant at some future time, nor
upon the happening of some future event, nor upon any
condition, but is an absolute grant in praesenti of a specified
quantity of land. The mere fact that something remained
to be done to identfy the particular parcels by selecting
them did not affect the grant itself. True, the legal title
may, in fact, have remained in the United States until the
land was actually selected and identified, but such title was
held in trust for the benefit of the state of Utah. The right
to the quantity of land specified in the act was in the state
of Utah from and after the approval thereof; but the title
to any particular parcel was held in trust by the United
States until selection was made by the state of Utah. We
do not think it was within the power of the Secretary of
the Interior to prevent the state of Utah from acquiring
the title to any particular parcel of land, if such parcel fell
within the terms of the grant itself. His duty was dis-
charged, and his power exhausted, when he found that the
land fell within the terms of the grant. If the land select-
ed was not such as was granted, or if it was outside the
limits of the grant the title thereto would fail, not because
the Secretary of the Interior refused to approve the se-
lection, but because the selection was not within the original
terms of the grant. To hold otherwise would be tanta-
mount to holding that the grant was made by the Secretary
of the Interior, and not by Congress. Congress, no doubt,
could have directed that officer to make conveyance by
patent of certain lands if he found that the conditions im-
posed, if any, had been complied with. Congress, how-
ever, did not do this. It made the grant, and authorized
no one either to convey or to withold a conveyance of the
title."

In McKinney v. Carson, 35 Utah, 180, 99 Pac. 660,
there was an action at law for damages for a trespass
very similar to the trespass in the case at bar. The de-
fense interposed was the same defense that title had not
passed from the government to the state, and therefore

the state's lessee had no cause of action for the trespass complained of. The selections in this case had been filed and approved in the local land office, but had not received the approval of the Secretary of the Interior. Objection was made to the introduction of the contract of lease upon the grounds stated. This selection was rejected by the Secretary of the Interior, with the consent of the state and the lessee, and it was urged that, the selection having been rejected, the state never acquired any right in the premises and therefore could confer none upon the lessee. The court said:

"It is asserted that, since the selection made by the state was rejected by the Secretary of the Interior, the state never had any right or title to the land, and if the state had none, it could confer none. It will be observed that the selection made by the state was approved by the local land office June 9, 1902, and that respondent went into possession under a contract from the state. The state, therefore, was acting under a selection made by it which had been duly filed and approved by the local land office. In a very recent case, entitled Brigham City v. Rich [34 Utah, 130] 97 Pac. 220, we held that a grant to the state of Utah under the enabling act was a grant in præsenti; that a selection duly made by the state and filed and approved by the Secretary of the Interior vested the title in the state of Utah from the date of the approval of the Enabling Act. We further in effect held that, if the lands selected by the state were not mineral and were located within the state of Utah, the Secretary of the Interior was powerless to defeat the rights of the state, because the grant was not dependent upon his act of approval. In other words, the refusal of the Secretary of the Interior to make the approval did not necessarily affect the passing of title, but his approval was evidence of the facts that the lands were of the character designated in the enabling act and were subject to the grant; if, therefore, the selected lands in fact were of the character granted in the Enabling Act that then the Secretary could not, by a mere rejection, defeat the rights of the state, since the enabling act conferred no such power upon him. In our conclusions in that case are sound, it follows that the state of Utah acquired such a right in the lands in question that it could agree to sell them to one desiring to purchase unless the lands were mineral lands. There is no claim that the lands in question were such, nor is it contended thaat the selection made by the state was rejected for that reason. From anything that is made to appear, therefore, the state could have insisted upon its right to the land in question, and the respondent could

Makemson v. Dillon, 24 N. M. 302.

likewise have done so. The mere fact that the state and the respondent acquiesced in the action of the Secretary of the Interior, whether such action was well founded or not, can make no difference so far as the appellant is concerned. The respondent had the exclusive right to the possession of the land until the selection made by the state was canceled with its consent, and until respondent acquiesced in the cancellation of the contract and surrendered up possession. But we think the respondent had the right of possession as against the appellant, who was a mere intruder, upon still another ground. Under the enabling act the state certainly had the exclusive right to select unoccupied and unclaimed nonmineral lands. The right of selection carried with it the right to take possession and to continue in such possession, at least until some one with a better right claimed the lands, or until they were found to be mineral in character. If the state had this right, it could transfer the right of possession to another, and the person who obtained it would certainly have the right to exclude mere intruders who had no right in or to the land whatever. The right of possession would continue until the United States insisted upon its higher right, that of true owner. As against appellant, therefore, who was a mere intruder without any rights, the respondent's rights must prevail."

[8] This latter case goes further than it is necessary to go in the case at bar, for the reason that here there has been no disapproval by the Secretary of the Interior. These two cases are the only cases we have been able to find dealing with the specific question involved, and we regard the reasoning of the cases not only as sound, but unanswerable. The grant to New Mexico is to be effectuated by selection, not only of these lands granted in quantity, but also as indemnity, and they are to be selected under the direction and subject to the approval of the Secretary of the Interior. The words "subject to the approval" we do not regard as giving the Secretary of the Interior discretion to arbitrarily refuse a selection for no reason at all. These words are to be understood to mean that the Secretary of the Interior shall investigate and pass upon and render judgment as to whether the lands selected are within the terms of the grant, and, if so, it is his duty to list them to the state.

[2] Certain minor considerations are presented in the brief of appellants, some of which will be noticed.

It is argued that the lands in question are public lands within the terms of sections 4636 and 4637, Code 1915, and as such are common pastures, and are therefore not subject to exclusive occupation by lessees from the state. The proposition is clearly without foundation. At the time of the passage of those two sections (1862) there were no public lands in the territory of New Mexico, except lands of the United States. The statute, therefore necessarily referred to the common use of the public domain. This statute can have no application at this time to lands which have been selected by the state under a grant from Congress.

[3] Appellants present the proposition that the record shows that these lands were leased to the appellee at 5 cents an acre, and that section 5190 of the Code requires lands to be leased at not less than 2 per cent. of the true value, to be determined by apparisement. It is further pointed out that the minmum purchase price fixed in section 10 of the Enabling Act for these lands is $5 per acre. The conclusion is sought to be drawn that the minimum rental on such lands must be 2 per cent. of $5, which would be 10 cents per acre. This is an erroneous assumption. The statute of the state requires the leasing of lands at 2 per cent. of their appraised value, which may be less than the purchase price fixed by Congress in the Enabling Act. No showing was made by appellants that the appraisement on these lands was at any particular price, and, even if the appellants were, in any event, in position to question the contract between the state and the third party, they would certainly be required to make a showing of failure on the part of the land commissioner if they desired to take advantage of that fact.

[4] Appellants seek to attack this lease of appellee on the ground that section 5189, Code 1915, authorizes the leasing only of such lands as are "owned" by the state, and that therefore there is no authority to lease them until title has been acquired. Counsel for appellee point out that the word "owned" has various meanings,

and in this connection he argues correctly that the word means any right or interest in the land, citing 6 Words and Phrases, p. 5130, and Baltimore & O. R. Co. v. Walker, 45 Ohio St. 577, 16 N. E. 475.

[5] Appellants complain of the failure of the court to sustain their demurrer to the evidence. The demurrer to the evidence was general in terms, and was based entirely upon its assumed insufficiency to warrant a continuance of the injunction. The court made findings of fact, all of which were supported by substantial evidence, and no error, therefore, can be successfully predicated in this court on the refusal of the court to sustain the demurrer.

[6] Appellants assert that the complaint of appellee states no cause of action for equitable relief. The proposition is not argued, and will therefore be dismissed without further comment.

[7] Counsel for appellants argue that by reason of the provisions of section 5226, Code 1915, which makes it a criminal offense to use for any purpose any land belonging to the state without being leased or purchased, that such statute is the sole remedy against appellants, and that, consequently, injunction will not lie. This is a plain misconception of the principle that where a new right, or means of acquiring it, is conferred by statute, and an adequate remedy for its invasion is given by the same statute, the parties are confined to the statutory remedy. It is no remedy to appellee for the trespass upon his leased lands to prosecute the offender criminally. The only remedy that the appellee had in the premises was either an action for damages, or an action for an injunction, which latter he chose.

We find no error in the record, and for the reasons stated the judgment of the court below will be affirmed; and it is so ordered.

HANNA, C. J. and ROBERTS, J., concur