2003 OK CIV APP 6

**Shannon ELLEDGE and Brigitte Elledge, individually and as husband and wife, Plaintiffs/Appellants,**

v.

**STILLWATER MEDICAL CENTER, Defendant/Appellee,**

and

**Lloyd Bernard Moore, Jr., M.D., Defendant.**

No. 97,811.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 8, 2002.

Certiorari Denied Dec. 18, 2002.

Gerald E. Durbin, II, R. Brad Miller, Durbin, Larimore & Bialick Oklahoma City, OK, for Plaintiffs/Appellants.

Beth S. Reynolds, Karen L. Callahan, Leslie C. Weeks, Rodolf & Todd, Tulsa, OK, for Defendant/Appellee Stillwater Medical Center.

Opinion by JERRY L. GOODMAN, Judge:

¶ 1 This is an appeal by plaintiffs Shannon and Brigitte Elledge (collectively, Elledge) from the trial court's grant of summary judgment in favor of defendant Stillwater Medical Center (SMC). The issue on appeal is whether SMC is a "political subdivision" for

purposes of the Governmental Tort Claims Act; if so, Elledge's lawsuit is untimely. Based on our review of the record and applicable law, we affirm.

¶ 2 The dispositive facts are undisputed. Shannon Elledge filed a petition against SMC and Dr. Lloyd Bernard Moore, Jr., asserting he received negligent care while Elledge was a patient in SMC's emergency room. Elledge's wife Brigitte also sued, for loss of consortium.

¶ 3 Indisputably, Elledge did not file written notice of his claim pursuant to the Governmental Tort Claims Act, 51 O.S.2001 §§ 151 through 172, within one year after his loss occurred. Under the Act's notice provision in § 156(B), a claim against the state or a political subdivision that is not presented within one year is forever barred.

¶ 4 SMC filed a motion for summary judgment, asserting that it was a political subdivision under the Act, meaning Elledge's lawsuit was subject to the Act and thus was barred. Elledge responded by asserting SMC was an illusory trust, and not subject to the Act.

¶ 5 The trial court granted SMC's motion for summary judgment. Elledge appeals. Though the trial court's order did not dispose of Elledge's claim against Dr. Moore, the trial court subsequently issued an order certifying the order for immediate appeal pursuant to 12 O.S.2001 § 994. Therefore, this appeal can proceed.

¶ 6 Because there is a complete absence of disputed material facts, this is an appropriate case for summary judgment. *Cordes v. Wood,* 1996 OK 68, ¶ 6, 918 P.2d 76, 78. The question presented is one of law; therefore, our standard of review of the trial court's decision is de novo. *Weeks v. Cessna Aircraft Co.,* 1994 OK CIV APP 171, ¶ 5, 895 P.2d 731, 733 (approved for publication by order of the Oklahoma Supreme Court). Additionally, whether SMC is a true public trust and therefore a political subdivision for purposes of the Act, is also a question of law. *See Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

¶ 7 "Political subdivision" is defined in § 152(8) of the Act. At one time, the definition simply included a public trust where a city, town, school district, or county was a beneficiary. In 1984, the legislature amended the definition to explicitly exclude hospitals operating under a trust authority. Then, in 1987, the legislature adopted the current version of § 152(8), which includes the following definition of "political subdivision":

d.   a public trust where the sole beneficiary or beneficiaries are a city, town, school district or county. For purposes of The Governmental Tort Claims Act, *a public trust shall include a municipal hospital* created pursuant to Section 30–101 et seq. of Title 11 of the Oklahoma Statutes, a county hospital created pursuant to Section 781 et seq. of Title 19 of the Oklahoma Statutes, or is *created pursuant to a joint agreement between such governing authorities, that is operated for the public benefit by a public trust* created pursuant to Section 176 et seq. of Title 60 of the Oklahoma Statutes and managed by a governing board appointed or elected by the municipality, county, or both, who exercises control of the hospital, subject to the approval of the governing body of the municipality, county or both[.]

Title 51 O.S.2001 § 152(8)(emphasis added).

■ ¶ 8 Indisputably, SMC is a public trust created pursuant to Title 60. Its sole beneficiary is the City of Stillwater. Under its trust indenture, SMC is operated and managed by a governing board of trustees whose members are appointed or approved by Stillwater's city commission, which is Stillwater's governing body. The city commission has the authority to remove a trustee without cause. All of these uncontroverted elements support SMC's position that it is a "political subdivision."

¶ 9 In response, Elledge asserts SMC is actually an illusory trust. He points out that under the trust indenture the city has no claim to the trust's income and no authority to transact the trust's business. He also points to the fact that the city exercises no control over SMC's finances in that it makes no payments to SMC nor receives any revenue from SMC. Furthermore, the city exer-

cises no control over hiring decisions. For authority, Elledge relies on *Roberts v. South Oklahoma City Hospital Trust,* 1986 OK 52, 742 P.2d 1077, and *Fowler v. Norman Municipal Hospital,* 1991 OK 30, 810 P.2d 822.

¶ 10 The problem with Elledge's argument is that, as SMC points out, those cases applied a pre–1987 version of the statutes. The factors he emphasizes were relevant under the "control test" set forth in those cases. However, current public trust law states, at 60 O.S.2001 § 176.1(D):

Except where the provisions of the trust indenture or of Section 170 et seq. of this title, or of any other law written specifically to govern the affairs of public trusts, expressly requires otherwise, the affairs of the public trust shall be separate and independent from the affairs of the beneficiary in all matters or activities authorized by the written instrument creating such public trust including, but not limited to, the public trust's budget, expenditures, revenues and general operation and management of its facilities or functions; provided, that either the public trust or the beneficiary may make payment of money to the other unless prohibited by the written instrument creating such public trust or by existing state law.

¶ 11 Reading this statute in conjunction with § 152(8) of the Act leads to the conclusion that the legislature intended to extend the Act's coverage to public trust hospitals that controlled their own budget and performed other management functions as provided by general public trust law. The relevant inquiry under current law is whether the exercise of control by SMC's trustees is "subject to the approval" of the city's governing body, as required by § 152(8)(d).

■ ¶ 12 "Approval" means to confirm or to give formal sanction. *Black's Law Dictionary* 98 (7th ed.1999). Put another way, it means the authority to veto an action, not compel it. *See, e.g., In re Lawyers Mortgage Co.,* 293 N.Y. 159, 56 N.E.2d 305 (1944).

¶ 13 The fact that a statute provides that a party's right to act is subject to the approval of some higher authority does not mean that approval is a condition precedent to the action becoming valid or effective. Instead, it places the right to act under the "inquisitori-

al power" of the higher authority to ensure that any challenged or questionable act is consistent with the statutory purpose. *See Cranmer v. Fidelity & Cas. Co.,* 18 So.2d 220, 222 (La.Ct.App.1944).

¶ 14 A similar conclusion was reached by the New Mexico Supreme Court in construing an act of Congress granting the state the right to select from federal lands "subject to the approval of the Secretary of the Interior." The court held that the state could validly lease such selected lands even if the selection had not received the Secretary's approval at the time of the lease. The court concluded that approval was not the power to validate the selection, but the duty to "investigate and pass upon and render judgment as to whether the lands selected are within the terms of the grant." *Makemson v. Dillon,* 24 N.M. 302, 171 P. 673, 676 (1918).

¶ 15 We hold that the legislature used "approval" in the current version of § 152(8) of the Act in the foregoing sense. The statute's "political subdivision" definition does not contemplate complete accountability by a trust, nor absolute control by a beneficiary. It intends general oversight by the beneficiary to ensure compliance with the trust indenture and the public trust statutes. In the absence of specific statutory directions, the manner in which such oversight needs to be carried out is a matter for the municipal beneficiary to determine.

¶ 16 Elledge failed to prove this oversight is nonexistent. Specifically, he must prove that the city failed to approve some specific act for which approval was required by the trust document or the statutes, or refused to review some specific challenged or questionable act of the trustees. This, he has not done.

¶ 17 In short, nothing in the record controverts SMC's status as a political subdivision under the Act. Accordingly, the trial court's judgment is affirmed.

¶ 18 AFFIRMED.

RAPP, J., concurs, and COLBERT, P.J., concurs in result.