### CITY OF TULSA v. WHITTENHALL.

No. 18403.   Opinion Filed March 19, 1929.

Rehearing Denied Nov. 26, 1929.

H. O. Bland, Harry L. S. Halley, and H. M. Gray, for plaintiff in error.

B. F. Ingraham, A. F. Moss, and Conn Linn, for defendant in error.

HALL, C. This was an action by A. W. Whittenhall against the city of Tulsa for damages on account of certain personal injuries which he received in falling through the covering of a storm sewer catch basin in one of the streets of that city. The basis of the negligence was that the city, through its employees, placed and permitted a defective lid to remain on the catch basin opening. The defect consisted in the lid being too small.

At the time of the injury the plaintiff was assisting in laying some concrete or stone work near the scene of the catch basin. He left the place where he had been working, walked across the parking, and stepped upon the lid, covering the manhole of the catch basin. The lid tilted and he fell into the hole, with one leg, resulting in a severe bruise about his sexual organs, which went to the extent of puncturing or rupturing his urethra, and breaking down the walls between the locality of the puncture and the scrotal sac, thereby causing his urine to leak into the scrotum around his testicles.

Immediately after the injury, the plaintiff called a doctor, who prescribed some simple or homeopathic treatment. At the time he called the doctor and when the doctor arrived the plaintiff was urinating blood. This doctor testified that he advised plaintiff to immediately call a specialist, a urologist, to have the exact nature of the injury worked out. The plaintiff denies that such suggestion was made. The plaintiff did not have any further treatment from a medical doctor until the elapse of about 16 days, at which time he called another physician and surgeon. This doctor sent him to a hospital. At that time the plaintiff's scrotum had swollen to enormous proportions, was filled with urine which had passed through the punctured urethra, down through the broken-down tissue to the scrotum: and the whole area was highly infected, and the plaintiff was suffering the severest pain. The scrotal sac burst from pressure caused from urine and pus, and the plaintiff was treated for several weeks at the hospital.

It seems that in order to encourage and make possible the healing of the broken place in the urethra, it was necessary to insert a

catheter, which was a small rubber tube pushed up into the bladder. The bladder was so inflamed and infected that pus would accumulate and clog this catheter or tube, and the contraction of the muscles would force the catheter out, which would re-infect or aggravate the healing process of the rupture. The wound finally healed, and the tissue in the scrotum finally softened to nearly normal condition.

Thirty-one days after the injury, the plaintiff, through his attorney, gave notice of the injury to the city, and a claim for damages in the sum of $50,000 was made. It is needless to say that the city did not pay the claim. The plaintiff filed suit against the city, the defendant, alleging damages in the sum of $50,000. The petition alleged and the action was prosecuted upon the theory that the plaintiff suffered four elements of damages. First, pain and suffering; second, permanent injuries as a direct result of the puncture of his urethra, because of scar tissue within the inner wall thereof, which would likely later produce stricture and impair his general health; third, the serious impairment of his sexual powers, either caused by the infection and intense inflammation around his testicles, or the result of the rupture as aforesaid; and fourth, hospital bills and medical attention. The case was tried two or three times. It appears that at one time there was a mistrial, and at another time the plaintiff secured a judgment for $3,200, and a new trial was granted on plaintiff's motion. It seems that attorneys for the city conceded it. At a subsequent trial, involving this appeal, the plaintiff was awarded a judgment for $12,500.

The plaintiff in error, the defendant in the trial court, in seeking a reversal of this case presents and urges at considerable length numerous propositions.

(1) It is first contended that the notice of the injury which was served on the city or its officers is fatally defective for five distinct reasons. (2) Error is also predicated upon the fact that the court admitted evidence of a prior accident at the same place, which accident or injury occurred four years prior thereto. (3) Also error is predicated upon the admission in evidence of a part of the opening statement of counsel for defendant, made at a former trial. (4) The refusal to receive certain evidence offered by defendant; (5) error in refusing certain requested instructions; and (6) that the verdict is excessive and rendered under passion and prejudice.

Pertaining to the first proposition, the notice, we will be unable to discuss it separately under the various subheads arranged and set forth in the brief of plaintiff in error. The notice was not filed within the 30-day period provided by the municipal charter of the city of Tulsa. Defendant in error also consumes a considerable space and the greater portion of his brief in making a somewhat plausible argument that this provision of the city charter, requiring as a condition precedent to an action in the courts on either a common-law liability or one created by the statutes affecting the people and citizenship as a whole, is **void**. But it is unnecessary for us to pass upon or seriously consider that proposition. It is enough to say that in this case there is ample evidence in the record supporting the finding of the jury that the plaintiff was unable within the 30-day period to give this notice.

In jurisdictions where such a provision as contained in the city charter of Tulsa is embodied in the statute law of the states, or embodied in the city charters by express provisions of the statutes or the respective Constitutions, the courts uniformly hold that physical or mental inability to file a claim within the statutory period extends the limitation. Our court has passed on this question in the case of the City of Tulsa v. Wells, 79 Okla. 39, 191 Pac. 186. Among other cases, may be mentioned the following: Hartsell v. City of Ashville et al., 164 N. C. 193, 80 S. E. 226; Randolph v. Springfield, 302 Mo. 33, 257 S. W. 449, 31 A. L. R. 612.

The notice stated that the injury occurred on or about the 3rd day of May, 1925, instead of stating the exact date, the 2nd day of May. The plaintiff in error urges that fact as the second ground of rendering the notice void. The third ground urged is the lack of particularization as to the exact location of the place where the injury occurred. The fourth objection is that the notice did not state definitely how the injury occurred; and the fifth is the contention that the notice was void because it was not served upon the proper officers. In this connection it may be mentioned that the notice was served on some person in charge of the city auditor's office. The charter provides that the notice must be served either upon the mayor or the city auditor. It appears that the auditor was "in the West," and the attorney for the plaintiff took the notice and left it with a girl in charge of the auditor's office.

The notice did not state in detail how the injury occurred. It did state, however, that the injury occurred by reason of the negli-

gence of the defendant on the date and a long time prior thereto by maintaining a sewer opening covering, a manhole for catch-basin purposes, and designated it according to street descriptions at the exact location or place of the injury, to wit, "Utica Ave. and Admiral Place."

We must understand that statutes of this nature, and charter provisions in cities limiting the right to maintain an action, either on contract or in tort, to the giving of certain prescribed notice within a certain time after the accrual of the cause of action, are in derogation of common right; that is, a right of the people of a commonwealth to maintain their common-law or statutory causes of action anywhere within a state, where the proper venue attaches, under the same rules of practice and procedure accorded them at any other point or place in the state. Therefore, these statutes or charter provisions, as against the municipality, must be strictly construed, and as against the claimant they must be given a liberal construction. This is undoubtedly the correct rule. 43 C. J., sections 1957 and 1962, and cases therein cited. Also Ruling Case Law, vol. 19, Subject "Municipal Corporations," sections 330, 331, 332, and 333.

Regarding the contents of this notice, it must be understood that notice of this particular character was never intended to be a pleading in a court, and such particularity is not required. The notice is for the purpose of apprising the city officers of the injury, so that they may make a reasonably speedy investigation of the facts for the use of themselves or their successors in office, and also that the dangerous object or dangerous conditions may be investigated and removed.

There is no merit in the contention that because the notice was not served personally upon the auditor, the notice is void. If such were the law, in case of a series of injuries suffered about the same time for which the city would be responsible in damages, the mayor and the city auditor could interpose an easy defense to the actions by simply leaving the city. The law was substantially complied with when the notice was served upon the person in charge of the office of the auditor. The law presumes that these officers will appoint as deputies or custodians of their records, persons who will promptly call such matters as the service of a notice of a claim for damages to the attention of their principal, when such notice was received in his absence. The following cases support our holding upon the question of the service of notice; McCabe v. Cambridge,

134 Mass. 484; Kelly v. Minneapolis, 77 Minn. 76, 79 N. W. 653; McMahon v. New York, 1 App. Div. 321, 37 N. Y. S. 289; Grand Forks v. Allman, 153 Fed. 532, 83 C. C. A. 554.

We conclude that the notice served in this action is good.

Over the objections of the defendant the court admitted the testimony of a Mrs. Turner, who four years prior to the injury complained of by plaintiff received certain injuries by falling into this same "manhole," under circumstances similar to the facts herein involved. The defendant contends that it was error to admit this testimony relating to this prior injury, although it occurred at the same place and from the same instrumentality, when such accident occurred four years prior to the date of the injury in controversy. We do not think that such contention is sound. It is generally conceded that prior accidents from the same source, that is, by the same instrumentality and at the same place (after the proper preliminary evidence has been adduced), may always be shown to impart notice of the defect to the defendant. But there is an apparent conflict of opinion as to their admissibility to show the dangerous character of the place, agency, or instrumentality causing the injury. Whatever might have been the former rule, which was against the reception of this evidence, except for the purpose of proving notice, the concensus of opinion at this time is that such testimony relating to prior accidents may be shown, both for the purpose of showing notice and for the purpose of showing the dangerous nature of the place or agency causing the injury. This doctrine has become the settled rule in this jurisdiction, as evidenced by the cases of Kingfisher v. Altizer, 13 Okla. 121, 74 Pac. 107; and Chickasha v. White et al., 45 Okla. 631, 146 Pac. 578. In Chickasha v. White, supra, some observations of the late Justice Field of the Supreme Court of the United States in District of Columbia v. Ormes, 107 U. S. 519, 27 L. Ed. 618, 2 S. Ct. 840, are quoted with approval. This same language, or a portion thereof, is quoted in the text of Jones' Commentaries on Evidence, vol. 2 (2nd Ed ) p. 1266, as supporting and declaring the rule that such evidence is admissible for the purposes herein stated.

Of course it must be understood that such evidence is admissible only where preliminary evidence is first adduced showing that the conditions at the time of the accident in controversy and the prior accident are similar. The rule as stated in Jones' Commen-

taries on Evidence, vol. 2 (2nd Ed.) p. 1268, is as follows:

"'And it is also plain that, in every attempt at proof by evidence of prior accidents, regardless of the tendency in the particular jurisdiction, there is a broad requirement that, as a condition precedent to the admission of such evidence, it must be shown that the condition, agency, or instrumentality causing the accident or injury was in substantially the same condition at the time of such former accident or injury as at the time of the accident or injury in controversy."

The admissibility of such evidence for the purpose of proving the dangerous character of the place is not necessarily dependent upon the element of time, provided that the other essentials necessary for its admission are present. However, for the purpose of proving notice, the element of time intervening between the prior accident and the accident in controversy, is a distinct governing factor. For example, when such testimony is offered to establish notice and the testimony relates to a remote period of time, the natural rule of relevancy would require the person offering such testimony to submit evidence from which the jury could reasonably infer that the defect had continued to exist up to and including the time of the happening of the particular accident in controversy. Otherwise, the testimony of the prior accident would be of no probative value, because it will be presumed that a dangerous condition, especially one not present through an initial defect in the instrumentality itself, but arising subsequently to its installation or construction, such as a defect from wear or breakage, would not be permitted to remain unchanged for a long period of time. In complying with the rule in such a case, it will be seen that independent implied notice would be given, and there would be no necessity for the reception of the testimony of the prior accident to prove notice. The task of rendering the testimony relevant would render it immaterial.

This matter, however, is not directly involved in this controversy, because whatever defect there existed was a patent or initial defect, a defect in the mechanism of the drain basin; that is, the lid was too small or the rim or shoulder in or on which the lid rested was too large. That physical fact within itself imparted notice to the defendant of the defect, and testimony relating to the prior accident was only necessary to illustrate the dangerous nature of the place, the covering over the basin. This testimony was admissible for the purpose just above

stated, and its reception for the purpose of proving notice did not prejudice the rights of the defendant.

It is urged that the court committed reversible error in permitting plaintiff to introduce in evidence a portion of the statement of counsel for defendant, made at a former trial of this case. The matter was introduced by plaintiff as an admission. It was not an admission, formal or informal, but was simply a declaration in his opening statement to the court and jury of what the city, the defendant, intended to prove. The introduction in evidence of this statement in this case was clearly error, but purely harmless error. The statement introduced related wholly to a matter of notice of the defective manhole or agency causing the injury. The construction which counsel for defendant places upon the statement is that it tended to induce the jury to believe that the city had knowledge of the defect, and that one of the defenses was the lack of notice.

As we have already said, the nature of this defect was inherent, that is, it existed from the time that the city, through its authorized agents or employees, constructed the catch-basin and "manhole." Notice was imparted from the day the manhole covering was placed there. The only issue on this was whether or not the alleged defect did in fact exist. Regarding this issue, the testimony was in direct conflict. Witnesses for the plaintiff testified that the lid covering the manhole was too small. Witnesses testifying for the defendant testified that the lid was a perfect fit and there was not sufficient space between the fittings to insert a sharp instrument to lift the lid. It was not a case where the accident or injury occurred from a broken lid or broken basin, but the defect or dangerous condition, if same existed, of necessity must have been known to the defendant from the time of its construction. It is therefore apparent that, regardless of the effect of this statement made by counsel for defendant at a former trial, defendant was not entitled to the defense of lack of notice. The statement, therefore, was harmless. At must, the statement tended to prove only what was already an established fact, to wit, notice.

It is next contended that it was error for the trial court to refuse to permit defendant to show on cross-examination of plaintiff's witness, Dr. Underwood, that he had not been paid for his professional services, and that the same was still owing by the plaintiff. The theory of this cross-examination was to try to show the interest of the

doctor in the outcome of the lawsuit. The objection to this testimony should not have been sustained. It is an elementary rule of evidence that upon cross-examination a witness may be asked any question which would tend to test his bias, prejudice, or interest in the matter concerning which he has testified. However, the meagerness of the amount of the doctor's bill, whether paid or unpaid, when compared with the importance of the controversy—meaning the amount which plaintiff was seeking as damages, and the actual amount of recovery—and considering this with the apparent fairness and apparent lack of bias on the part of plaintiff's witness, Dr. Underwood, we think that the error of the court was not materially prejudicial to the rights of defendant.

Another objection is directed at the amount of recovery. It is the contention of the plaintiff in error that the testimony did not justify the conclusion that plaintiff received any permanent injuries to his general health. That is, defendant contends that the plaintiff's ability to earn a livelihood has not been impaired. It must be conceded that the pain and suffering, both physical and mental pain, which the plaintiff suffered as a result of the injury was a demonstrated fact. Also we may properly assume, especially in the light of the expert evidence adduced, that a scar tissue upon the urethra, especially when such scar tissue follows a pronounced infection, as in this case, some permanent injury is present. Dr. Underwood testified that a stricture might appear within one year or within ten years. At the time the case was tried, however, apparently there were no symptoms of stricture.

Among other grounds, plaintiff sought damages in this case because of impairment of his sexual powers. The testimony relating to that issue which was submitted to the jury disclosed a partial loss of the normal functioning of his sexual organs. In this connection, Dr. Underwood, in the course of his testimony, portrayed the following rather indefinite, but indeed melancholy spectacle:

"Q. I say, did the presence of the character and quantity or kind of pus which was around the testicles for the length of time that it was there, exercise any influence over his ability to create his kind? A. Create what? Q. To create his kind—over his ability to have children. A. Why, we don't know how much—that is what I said a while ago, I don't know how much damage was done to his testicles on account of this amount of scar tissue which necessarily must (have formed in his scrotum) form his scrotum. Why, we don't know but that later on in life he may have diseased testicles, or may have that now, but I have no way of telling. He may be sterile. And in addition to that, he may get other diseases of the testicles, which is often the case from old injuries, why, you get up an old inflammatory condition of the testicles, they later have to be removed—sometimes tubercular condition because of low vitality, may attack a testicle and they have to come out. I don't know. After a testicle is injured you don't know what the result is going to be in the future."

We do not think that the amount of the recovery is excessive.

We have examined the instructions, and they fairly state the law and reflect the issues in the case. In fact, the instructions are more favorable to the defendant than they are to the plaintiff. Therefore, it was not error to refuse the requested instructions offered by the defendant.

There are numerous other errors assigned and urged at considerable length. We have carefully considered all the points presented and the arguments in support thereof, and find no such merit in the contentions as would justify reversal of the judgment.

Therefore, the judgment of the trial court is affirmed.

BENNETT, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.