Richard ROBERTS, Appellant,

v.

SOUTH OKLAHOMA CITY HOSPITAL TRUST d/b/a South Community Hospital Professional Medical Services Corporation, a corporation; and Dr. Thomas Garrett, Appellees.

No. 60999.

Supreme Court of Oklahoma.

July 22, 1986.

Rehearing Denied Sept. 29, 1987.

---

27. See note 5, supra.

Berry & Berry, P.C. by Howard K. Berry, III, Oklahoma City, for appellant.

Fenton, Fenton, Smith Reneau & Moon by Dale Reneau, Oklahoma City, for appellees.

KAUGER, Justice.

The dispositive issue on appeal is whether South Community Hospital Trust d/b/a South Community Hospital is a valid public trust within the purview of the Political Subdivision Tort Claims Act, 51 O.S.Supp. 1979 §§ 152(6), 156(D) (Act). If South

Community Hospital is in reality a public trust, claims against it must be brought within one year pursuant to § 156(D) of the Act. If the hospital is not a public trust, notwithstanding the trust indenture naming the City of Oklahoma City as beneficiary, the applicable statute is the two year limitations period prescribed by 12 O.S.1981 § 1053(A). Under the facts of this case, judged by the substance of the transaction and not by the form, we find that the conveyance is illusory, masking the retention by South Community Hospital of control of the entity which it purported to convey.[1] Therefore, because the public trust does not qualify as a political subdivision, the notice provisions of the Act are inapplicable.

On February 10, 1981, Crystal Roberts entered the emergency room of South Community Hospital (appellee). She complained of pain in her arms and in her chest. The emergency room physician examined her and admitted her as a patient of the hospital at 10:20 p.m., February 10, 1981. Because no beds were available in the hospital's coronary care unit, Mrs. Roberts was placed in a regular ward. At 4:30 a.m., February 11, 1981, Mrs. Roberts was found dead in her hospital bed.

On July 27, 1982, the surviving spouse, Richard Roberts (appellant/husband) filed an action alleging that the attending physician and the hospital were negligent in the care and treatment of his wife. The hospital filed its answer September 28, 1982, denying the allegations of negligence and of an agency relationship between the hospital and the attending physician. On May 23, 1983, the hospital amended its answer asserting the failure of the husband to comply with the notice provisions of the

Act, 51 O.S.Supp.1979 § 156(D)[2] which requires notice to be given within one year after the alleged injury causing the death, and raising a statute of limitations defense. The hospital's motion for summary judgment was sustained by the trial court based on the hospital's status as a public trust.

On appeal, the husband admits that he did not file a claim against the hospital in accordance with the notice provisions of the Act; he further admits that the receipt of suit papers was the first notification that the hospital received of its potential liability for the death of his wife. However, the husband argues that the hospital is not a public trust within the contemplation of the Political Subdivision Tort Claims Act, and that because the hospital carries liability insurance the notification provision of the Act is not related rationally to a legitimate state interest, and is, therefore, unconstitutional. Because we find that the South Oklahoma City Hospital Trust is illusory, we need not address the appellant's constitutional attacks on the Act.

## SOUTH COMMUNITY HOSPITAL TRUST D/B/A SOUTH COMMUNITY HOSPITAL IS NOT A POLITICAL SUBDIVISION SUBJECT TO THE NOTICE PROVISIONS OF 51 O.S.Supp.1979 § 156(D) BECAUSE THE UNDERLYING PUBLIC TRUST IS ILLUSORY

### (A)

Under the 1979 version of the Political Subdivision Tort Claims Act, 51 O.S.Supp. 1979 § 152(6) effective July 1, 1979, the term, political subdivision included a public trust if it named a city, town, school district or county as its beneficiary.[3] The

---

**1.** See *Newman v. Dore*, 275 N.Y. 371, 9 N.E.2d 966, 969, 112 A.L.R. 643, 648 (1937). See also Annot., "Gift by Husband as Fraud on Wife", 112 A.L.R. 6419 (1938).

**2.** Title 51 O.S.Supp.1979 § 156(D) provides:
"When the claim is one for death by wrongful act or omission, notice may be presented by the personal representative, surviving spouse or next of kin or other legal representative or the counsular officer of a foreign country of which the deceased was a citizen, within one (1) year after the alleged injury or loss result-

ing in such death. Provided, however, if the person for whose death the claim is made has presented notice that would have been sufficient had he lived, an action for wrongful death may be brought without any additional notice."

**3.** Definitions are contained in the Act, 51 O.S. Supp.1979 § 152(6):
"6. 'Political subdivision' means:
a. a municipality;
b. a school district;
c. a county; or

husband contends that South Community Hospital is not a public trust within the contemplation of the Act. He asserts that by the terms of the trust agreement the beneficiary, the City of Oklahoma City, exercises no control over the everyday affairs of the hospital;[4] that lack of control over the hospital by a governmental entity exempts the hospital from the statutory definition of a "political subdivision"; and that, therefore, the notice requirement and time-bar limitation of the Act are inapplicable.

In support of this argument the appellant cites the Attorney General's Opinion No. 79-303, which addressed the question of whether municipal hospital authorities and municipal housing authorities are subject to the Political Subdivision Tort Claims Act. At the time of the presentation of the question in 1978, the Act did not include public trusts—it provided, however, that the term political subdivision included either an incorporated city or town, a school district or a county and all of their institutions, instrumentalities or agencies. In *Hammons v. Muskogee Medical Center Authority*, 697 P.2d 539, 541 (Okla.1985), we held that before the 1979 amendment to the Act, a municipal hospital was protected by the Act only if it constituted an agency of a political subdivision.

■ Although the husband does not question or challenge the fact that the hospital was created by a public trust instrument naming the City of Oklahoma City as its beneficiary, he urges us to construe 51 O.S.1979 Supp. § 152(6) to exclude the hospital from the statutory definition of a political subdivision.[5] We begin our analysis by observing that a public trust is any trust created and existing under 60 O.S. 1981 § 176 et seq.[6] By statute, a public trust may be created to issue obligations to provide funds for any authorized function of the state, county or municipality. South Community Hospital's facade is that of a public trust created under 60 O.S.1981 § 176(a),[7] and of a political subdivision under the statutory definition contained in 51 O.S.1981 § 152(6). The husband argues that there is a distinction between a true municipal hospital created under 11 O.S. 1981 §§ 30-101 et seq. and a hospital created and operating under only a mere trust authority. His argument is persuasive.[8] We agree that because this entity is not being conducted as a trust for the public benefit it is an illusory public trust, which cannot qualify under § 152(6) as a true political subdivision.

■ An explanatory x-ray of the legal status of a given hospital may be derived

---

d. a public trust where a city, town, school district or county is a beneficiary; and all their institutions, instrumentalities or agencies."

**4.** Article VII of the Trust Indenture provides:
"(2) The beneficiary shall have no legal title, claim or right to the Trust Estate, its income, or to any part thereof or to demand or require any partition or distribution thereof. Neither shall the beneficiary have any authority, power or right, whatsoever, to do or transact any business for, or on behalf of, or binding upon the Trustees or upon the Trust Estate, nor the right to control or direct the actions of the Trustees pertaining to the Trust Estate, or any part thereof. The beneficiary shall be entitled solely to the benefits of this Trust, as administered by the Trustees hereunder, and at the termination of the Trust, as provided herein, and then only, the beneficiary shall receive the residue of the Trust Estate."

**5.** Section 152(6)(d) was amended May, 1984, effective 12:01 a.m. October 1, 1985 to provide:
"8. 'Political subdivision' means:
a. a municipality;

b. a school district;
c. a county;
d. a public trust where a city, town, school district or county is a beneficiary, *provided, that for the purposes of this act, a public trust shall not include any hospital operating under a trust authority,* and all their institutions, instrumentalities or agencies."

**6.** A definition of public trust is found at 11 O.S.1981 § 24-105(g) and provides in part:
"(g) 'Public trust' shall mean any public trust created and existing under the provisions of Trusts for Furtherance of Public Functions Law, as provided by Section 176 et seq. of Title 60 of the Oklahoma Statutes...."

**7.** Authority to create a public trust is provided by 60 O.S.1981 § 176(a), and states in part:
"(a) Express trusts may be created to issue obligations and to provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose of the state or of any county or municipality...."

**8.** See note 1, supra.

via an exploration of its financial anatomy. A municipal hospital created and funded under 11 O.S.1981 § 30–101 is an entity whose financial obligations could affect the fiscal structure of the municipality itself. A Title 11 hospital is funded through submission of its financial statement and an estimate of needs[9] to the County Excise Board. The hospital is managed by the municipal governing body;[10] the treasurer of the hospital is the municipal treasurer;[11] the governing body of the hospital exercises internal control of the hospital[12] subject to the approval of the municipal governing body, and it hires the hospital's employees;[13] the municipality accepts funds and gifts on behalf of the hospital, and the hospital makes an annual report to the municipality. The true municipal hospital *is an extension of and an agency* of the municipality. Any claim for compensation for harm suffered by an individual at the hands of a Title 11 hospital is potentially disruptive to the orderly process of government. The notice provisions of the Act would be applicable to a traditional municipal hospital[14]—but not, however, to a private hospital masquerading as a municipal institution.

## (B)

█ Unless explicitly immunized by law, political subdivisions are now liable in tort.[15] Traditionally, the operation of hospitals has been held to be a proprietary function of government subject to liability for tortious conduct.[16] South Community Hospital's statute-predicated claim to an exception from the general statute of limitation was short-lived in our jurisprudence. In 1984, the Legislature amended the notice provisions of the Act effective October 1, 1985, at 12:01 a.m.,[17] specifically exclud-

9. The estimate of needs is forwarded to the county excise board pursuant to 68 O.S.1981 § 2485 which provides:
   "Each officer, board or commission of any county, city, school district or town ... shall ... make and file ... with ... the excise board, a report in writing showing, by classes, the earnings and cost of maintaining their respective offices or departments for the previous fiscal year, together with an itemized statement and estimate of the probable need thereof for the current or ensuing fiscal year. Provided, that the report relative to the construction and repair of bridges shall be made by the county commissioners ..."
   Title 11 O.S.1981 § 30–101 provides:
   "A municipal governing body may establish and maintain a municipal hospital. After the establishment of a municipal hospital, the governing body shall include an item in its municipal financial statement and estimate of needs for the following fiscal year to maintain the hospital."

10. Direction and control of the hospital is mandated by 11 O.S.1981 § 30–102, it provides:
    "The municipal governing body may, ... place the exclusive management and control of the municipal hospital under a board of control of five (5) members, chosen by the governing body from the citizens of the municipality with reference to their fitness for such office...."

11. The finances of the hospital are directly connected to those of the municipality by 11 O.S. 1981 § 30–103. It provides in part:
    " ... The municipal treasurer shall act as treasurer of the board."

12. The municipality exercises internal control over expenditures and receipts as prescribed by 11 O.S.1981 § 30–104 through the board of control:
    "The board of control shall adopt rules and regulations ... which shall be subject to the approval of the municipal governing body.... All money received by the board on account of the operation of the hospital, or otherwise, shall be paid by the board to the municipal treasurer,.... The board of control shall have authority to appoint, and remove, ... compensation, all of which shall be subject to the approval of the municipal governing body."

13. The municipality controls hospital staffing through the board of control. 11 O.S.1981 § 30–106 provides:
    "The board of control shall appoint [personnel] to render ... treatment to ... patients of the hospital."

14. See *Hammons v. Muskogee Medical Center Authority*, note 6, supra.

15. *Jarvis v. City of Stillwater*, 669 P.2d 1108, 1111 (Okla.1983).

16. *Hershel v. University Hosp. Found.*, 610 P.2d 237, 240–42 (Okla.1980).

17. Title 51 O.S.Supp.1985, § 152 provides in pertinent part:
    "8. ...
    d. a public trust where a city, town, school district or county is a beneficiary, provided, that for the purposes of this act, a public trust

ed hospitals operating under a trust authority from the Act's protective umbrella.

We have discussed at some length the control mechanisms exercised in a true municipal hospital; and we recognize that there may be valid public trusts whose affairs are conducted on some middle ground between the operation of a municipal hospital and a proprietary hospital. Nevertheless, a comparative examination of South Community Hospital's operating procedures is illuminating. The pleadings filed in this case are styled South Oklahoma City Community Hospital Trust d/b/a South Community Hospital. The answer filed by the hospital is captioned "Separate Answer of Defendant, South Oklahoma City Trust, d/b/a South Community Hospital." The hospital administrator testified in his deposition that the hospital is managed by the South Community Hospital Management Corporation and that the bank account which is used by the management corporation is in the name of South Community Hospital. As he put it: " ... That's the way we do business." South Community Hospital promotes and projects the image of a private hospital in its everyday operations. Fund drives are held in the name of South Community Hospital. Hospital rules and regulations, staffing decisions, and day-to-day operations are not subject to City approval, and the hospital, without consulting the City, chooses its insurance carrier. In effect, the hospital operates under an assumed, fictitious, chameleon-like identity which fails to put its patients on notice that it purports to be a political subdivision; or that it lays claim to a political subdivision's immunity status.

This tenuous relationship between South Community Hospital and the City of Oklahoma City is one of convenience solely brought about by a statutory funding process. There is no direct benefit to the City; the hospital neither receives money from the City nor does it deposit funds into the City treasury. South Community Hospital operates daily and routinely as a private business without interference by or accountability to the City of Oklahoma City. *The only nexus between South Community Hospital and Oklahoma City is the trust agreement.* The agreement provides that in the event that the hospital is liquidated or otherwise ceases to exist, all outstanding debts will be paid and the residue of the liquidation, if any, will be paid to the City of Oklahoma City.[18] The trust agreement is merely a method of financing the construction of a health care facility in a given community—in no sense of the term is it a true political subdivision.

An arrangement pretending to be a trust while retaining powers in the settlor has no real substance and is in reality an incompleted trust.[19] An illusory trust lacks either an express trust instrument or, if an agreement exists, the settlor reserves virtually complete control over the trustee's administration of the trust. In either instance, the transferor reserves and exercises such a degree of control over the property that Courts are often drawn to the conclusion that there was no real intent to transfer, that the transaction is a sham, and that in effect, the trustee is merely an agent acting under the direction of the settlor.[20]

The leading case involving illusory trusts is *Newman v. Dore,* 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 643 (1937), in which a married man, in order to avoid community property laws, transferred all of his property in trust reserving a life estate and the power of revocation. The trust agreement subjected the trustee's powers to the settlor's control. In *Newman,* the court noted that no jurisdiction had upheld a transfer in trust where the conveyance was intended to hide the fact that the settlor retained full control of the property even though it was formally disposed of; and that, although a person may use lawful means to

shall not include any hospital operating under a trust authority,...."

**18.** See note 3, supra.

**19.** *In re Estate of Herron,* 237 So.2d 563, 566 (Fla.App.1970).

**20.** *Commissioner of Int. Rev. v. Chase Manhattan Bank,* 259 F.2d 231, 257–58 (5th Cir.1958).

escape the scope of a statute, a false appearance of legality is unavailing.

The *Newman* court held that reality, not appearance, should determine legal rights, and that the only sound test of the validity of a challenged transfer is whether it is real or illusory. The Court applied the test formulated in *Leonard v. Leonard,* 181 Mass. 458, 462, 63 N.E. 1068–69 (1902): has the settlor in good faith divested himself of ownership in the property or has an illusory transfer been made? Good faith is defined by 25 O.S.1981 § 9 as consisting of an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of the law.[21]

■ A trust is invalid unless it can be enforced, even against the will of the trustee.[22] Although a trust instrument may purport to name a beneficiary, if the settlor reserves a substantial interest or unbridled control over management of the operations, —i.e., not for the benefit of the purported beneficiary, the trust may be found to be illusory. Subsequently, the settlor remains the owner of the property and there is no beneficiary.[23] In summary, South Community Hospital Trust d/b/a South Community Hospital is not a public trust of the City of Oklahoma City because:

1. In the absence of dissolution, there is no direct monetary benefit to the City. The City does not budget for the operation of the Hospital nor does the Hospital contribute to the City's treasury.

2. The Hospital's business is conducted without consultation with the City nor is it conducted within any parameters of City sponsored policy. The trust inden-

ture specifically strips the City of any power or control.

3. The only connection between the hospital and the City is the trust agreement which provides fiscally attractive statutory funding.

4. With the exception of general patient care, there is no indication that the hospital is being managed for the benefit of the public as distinguished from the Hospital management's self-generated goals.

■ This opinion does not impose sanctions on other public trusts nor does it impair the right of public trusts to secure funding or any other benefits accruing under extant Oklahoma law; nor do we intend to impute bad faith to the trust authority. We merely find that this is not a public trust which may qualify for statutory immunity. Our rationale is analogous to the piercing of the corporate veil where one corporation is so organized and controlled that it is merely an adjunct or instrumentality of another.[24] We find that under the facts and circumstances of this case, the illusory nature of the trust prevents it from meeting the requisites of a public trust under the statutes. Therefore, the controlling statute of limitations is the two year statute contained in 12 O.S.1981 § 1053(A).[25]

REVERSED AND REMANDED.

SIMMS, C.J., DOOLIN, V.C.J., and OPALA and WILSON, JJ., concur.

HODGES, LAVENDER, HARGRAVE and SUMMERS, JJ., dissent.

---

21. Title 25 O.S.1981 § 9 states:

"Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious."

22. *Seran v. Davis,* 174 Okla. 433, 50 P.2d 662, 667 (1935).

23. G. Bogart and G. Bogert, "The Law of Trusts and Trustees," p. 127 § 161 (2nd ed. 1984).

24. *Gulf Oil Corp. v. State,* 360 P.2d 933, 936 (Okla.1961).

25. It is provided by 12 O.S.1981 § 1053(A):

"A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his personal representative if he is also deceased, if the former might have maintained an action, had he lived, against the latter, or his representative, for an injury for the same act or omission. The action must be commenced within two (2) years."

OPALA, Justice, with whom KAUGER, Justice, joins, concurring.

The issue dispositive of this appeal is whether the hospital entity haled into court as a wrongful-death defendant is a private business enterprise disguised to look like an appendage to Oklahoma City's government or whether it is a true public agency. The court concludes that the hospital's status as a public trust constituting a political subdivision within the meaning of 51 O.S. 1981 § 152(6)[1] is "illusory."[2] Although I join the court's judgment as well as its opinion, I write separately to *add* that *no nonpublic enterprise*—one that neither generates nor receives *public funds* and is not charged by law with the responsibility of conducting *some public business*—may lawfully be included, however inadvertently, in *any* legislatively-fashioned class of entities that qualify for governmental immunity from tort liability. This is so because, under Art. 5, § 51, Okl.Const., no "association, corporation, or individual" may be granted "any exclusive rights, privileges, or immunities" within this State.[3] Inasmuch as such an inclusion stands prohibited by the clear command of our fundamental law, whenever a tort defendant invokes the shield of The Governmental Tort Claims Act, 51 O.S.Supp.1985 §§ 151 et seq., and its immunity claim is challenged, the court *must* conduct a meaningful inquiry into the defendant's *true status* as a *de jure* as well as *de facto public entity* that falls within the protected statutory class.

This private-hospital entity cannot pass muster as a public enterprise. Although it may have been properly created as a "public trust" and it superficially meets the definitional parameters set forth in 51 O.S. 1981 § 152(6), its tort immunity claim must fail. The law's favored status of a governmental tort liability defendant may not be conferred either by the legislature or by the courts upon an entity that merely masquerades as a public body. One who seeks the mantle of protection afforded by The Governmental Tort Claims Act, or any of its antecedent versions, must be in a public service enterprise *both de jure and de facto*. Art. 5, § 51, Okl.Const.[4]

Legislative inclusion of a *de facto* nonpublic body into a public-entity class statutorily shielded from the general norms of tort liability also violates those provisions in Art. 5, § 46, Okl.Const.,[5] which prohibit

1. Now repealed. See 51 O.S.Supp.1985 § 152(8). Hospitals organized as a public trust are now excluded from the definition of a "political subdivision." The terms of 51 O.S.Supp. 1985 § 152(8) provide:
"8. 'Political subdivision' means:
   a. a municipality,
   b. a school district,
   c. a county,
   d. a public trust where a city, town, school district or county is a beneficiary, *provided, that for the purposes of this act, a public trust shall not include any hospital operating under a trust authority, and all their institutions, instrumentalities or agencies.*" [Emphasis mine]

2. Oklahoma City's interest as a "public" beneficiary of the hospital trust is indeed "illusory." It may be characterized as limited to no more than a genre of *spes successionis*—a mere hope of receiving whatever, if anything, will remain after the dissolution of the hospital trust has been effected *by the sole will* of the Trustees in control. *Spes successionis* is defined as hope of succession. Webster's New International Dictionary of the English Language, Second Edition, Unabridged, p. 2420 [1961].
In Art. VIII of the hospital trust indenture it is provided that "[t]he beneficiary shall have *no legal title, claim or right to the Trust Estate, its income, or to any part thereof or to demand or require any partition or distribution thereof. * * * The beneficiary shall be entitled solely to the benefits of this trust, as administered by the Trustees hereunder, and at the termination of the Trust ... and then only, the beneficiary shall receive the residue of the Trust Estate.*" [Emphasis mine]

3. See *Loyal Order of Moose, Lodge 1785 v. Cavaness*, Okl., 563 P.2d 143, 93 A.L.R.3rd 1234 [1977].

4. As a *de facto* private hospital this wrongful-death defendant must be treated as a member of *no other class* than that of private tortfeasors answering the same or like legal claims.

5. The terms of Art. 5, § 46, Okl.Const., provide in pertinent part:
"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
   \* \* \* \* \* \*
Regulating the practice or jurisdiction of, ... in judicial proceedings or inquiry before the courts, ...

the regulation of limitations of actions and of court procedure by "special" acts. By force of this section the limitation period, as well as the general norms of trial practice, must be the same for *all nonpublic defendants* haled to answer either for a like tort or for one that falls within an identical legal category. Since this hospital entity is *de facto* a private business enterprise, it is *constitutionally* subject to the same adjective law as that which governs *all other similarly situated private tortfeasors.*[6]

The plaintiff should hence be allowed to proceed free from all the statutory impediments that shield public agencies.[7]

SUMMERS, Justice, dissenting:

The plaintiff's wife died on February 11, 1981, at which time the Oklahoma Political Subdivision Tort Claims Act had been in effect some two and one half years. Among the short periods of limitations established by the Act at its inception was one imposing a requirement for *notice* to the political subdivision in claims for *wrongful death* within *one year* after the alleged injury resulting in death. 51 O.S. 1978 § 156(D).

The Act in 51 O.S.1978 § 152(6) originally defined political subdivisions as

```
        *   *   *   *   *   *
For limitation of civil ... actions;
        *   *   *   *   *   *   "
```

"either an incorporated city or town, a school district or a county and all their institutions, instrumentalities or agencies."

The legislature amended that section effective July 1, 1979 as follows:

"Political subdivision means:

  a.  a municipality;

  b.  a school district;

  c.  a county; or

  d.  *a public trust where a city,* town, school district or county *is a beneficiary* " (emphasis added)

Such was the status of the Tort Claims Act on the date plaintiff's wife died.[1]

Defendant's motion for summary judgment was supported by an affidavit that the South Oklahoma City Hospital Trust d/b/a South Community Hospital was a public trust created in accordance with 60 O.S.1961 § 176–180, and that its beneficiary is the City of Oklahoma City. Attached to plaintiff's brief is a copy of Page 10 of the Trust Indenture, providing in part as follows:

"Article VIII Beneficiary of Trust

(1) The beneficiary of this Trust shall be the City of Oklahoma City, Oklahoma, a municipal corporation, under and pursuant to Title 60, Oklahoma Statutes 1961, Sections 176 to 180, both inclusive, and

---

**6.** *Loyal Order of Moose, Lodge 1785 v. Cavaness,* supra note 3; *City of Tulsa v. Macura,* 186 Okl. 674, 100 P.2d 269, 271 [1940]; *City of Tulsa v. Wells,* 79 Okl. 39, 191 P. 186 [1920]; *City of Tulsa v. Whittenhall,* 140 Okl. 160, 282 P. 322 [1929]; *City of Tulsa v. McIntosh,* 141 Okl. 220, 284 P. 875 [1930] and *City of Tulsa v. Adams,* 151 Okl. 165, 3 P.2d 155 [1931]. See also *Tabler v. Wallace,* 704 S.W.2d 179, 185–186 [Ky.1986], where the Kentucky counterpart of Art. 5, § 46, Okl.Const., was similarly construed to prohibit the legislature from passing a statute of limitation applicable solely to a "special" class of tortfeasors.

**7.** The effect of the court's pronouncement in the case at bar—declaring Oklahoma City's governmental interest in the public trust that operates the hospital entity in suit to be illusory—need not be restricted to future disputes over a tort defendant's status as a public body both *de jure* and *de facto.* Cf. *Vanderpool v. State,* Okl., 672

P.2d 1153 [1983]. Today's holding does not break new ground. It has been unmistakably foreshadowed. Oklahoma jurisprudence long ago firmly rejected the notion that the common law's doctrine of sovereign or governmental immunity could be extended to private enterprise clad in public clothing. *State v. Bone,* Okl., 344 P.2d 562 [1959]; *Moran v. State ex rel. Derryberry,* Okl., 534 P.2d 1282 [1975]; see also Spector, State Sovereign Immunity In Tort: Oklahoma's Long and Tortuous Road, 34 Okla.L.Rev. 526, 549–551 [1981].

**1.** The legislature has since seen fit to amend "out" hospitals such as defendant here by the following exclusion from 51 O.S.1985 § 152(8) (effective October 1, 1985).

"Political subdivision" means:

  •    •    •    •    •

"d.  A public trust where a city, town, school district or county is a beneficiary, *provided, that for purposes of this act a public trust shall not include any hospital operating under a trust authority.*" (emphasis added)

other statutes of the State of Oklahoma as presently in force and effect. Trustor now declares that this Trust Indenture shall be irrevocable from the moment it is signed by him and delivered to the Trustees, and that it shall thereafter stand without any power whatsoever at any time to alter, amend, revise, modify, revoke or terminate any of the provisions of this Trust Indenture."

A majority of the court has determined that the statutory notice requirements don't apply because the South Community Hospital is not a political subdivision at all, and that is because it is not a real public trust; it is merely an "illusory" public trust.

The Act under which South Community Hospital and all other public trusts in the state are formed is found at 60 O.S.1981 §§ 176–180 (originally adopted in 1951) under the heading "Trusts for Furtherance of Public Functions." In light of those sections let us examine the court's conclusions.

Conclusion #1. "In the absence of dissolution, there is no direct monetary benefit to the City. The City does not budget for the operation of the Hospital nor does the Hospital contribute to the City's treasury."

Section 176(a) provides in part:

"Provided, that no funds from said beneficiary derived from sources other than the trust property, or the operation thereof, shall be charged with or expended for the execution of said trust, except by express action of the legislative authority of the beneficiary. . . ."

So although the Act doesn't forbid the city from lawfully providing funds for the trust, nowhere does the Act require it.

Conclusion #2. "The Hospital's business is conducted without consultation with the City nor is it conducted within any parameters of City sponsored policy. The trust indenture specifically strips the City of any power or control."

Section 178D provides in part:

"Meetings of trustees of all public trusts shall be open to the public to the same extent as is required by law for other public boards and commissions. Such meetings shall also be open to the press and any such equipment deemed necessary by the press to record or report the activities of the meetings. . . . Records of the trust and minutes of the trust meetings of any public trust shall be written and kept in a place, the location of which shall be recorded in the office of the county clerk of each county, wherein the trust instrument shall be recorded. Such records and minutes shall be available for inspection by any person during regular business hours."

Nowhere does the Act require the trust to conduct its business in the proximity of or with the approval of the city council. Nor does the Act attempt to give the beneficiary-city any control over the way the trust-hospital does business.

Conclusion #3. "The only connection between the hospital and the City is the trust agreement which provides fiscally attractive statutory funding."

This is also a correct statement. But no rule of the law requires that there be a "connection" between the trust and the beneficiary apart from the trust instrument. Section 176(a) tells us why trusts such as this one may be created:

"Express trusts may be created to issue obligations and to provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose of any . . . municipality. . . ."

The court, however, has not pointed out a single invalidity in the way the South Community Hospital Trust was established or conducted. The hospital is a public trust created and doing business under 60 O.S. 1981 §§ 176–180; at least there is no evidence to the contrary. The majority opinion appears to be burdening it with the obligations of a municipal hospital created under 11 O.S.1981 § 30–101, which it is not.

Is it a political subdivision? No, not now, because of the legislative amendment effective October 1, 1985. Was it a political subdivision on February 11, 1981, the date of death? Yes, if we are to believe the legislature. If the statute says a "political subdivision" is a "public trust where a city is a beneficiary" I am obliged to agree. In *Oliver v. City of Tulsa*, 654 P.2d

607 (Okl.1982), we said, quoting from *Minnix v. State,* 282 P.2d 772 (Okl.Cr.1955),

"It is within the province of the legislative body to define words appearing in legislative acts, and where an act passed by the legislature embodies a definition, it is binding on the courts." (Id at 611)

We are thus not at leisure to disregard a definition placed in a statute by the legislature.

Nor is the doctrine of *Newman v. Dore,* 275 N.Y. 371, 9 N.E.2d 966 (1937) well placed here. The case of a sham transfer to defeat a wife's interest under community property laws is hardly applicable to a hospital serving the public in full compliance with the statutes under which it was established.

My disagreement with the special concurring opinion is that I find no offense done to Article 5, Section 51 of the Oklahoma Constitution. That provision forbids the legislature from granting any *"exclusive* rights, privileges, or immunities." (emphasis mine). It, along with Article 2, Section 32, is designed to prevent the granting of exclusive rights and privileges and the creation of monopolies. *Ex parte Sales,* 108 Okl. 29, 233 P. 186 (1925). It is intended to preserve equality between citizens who are similarly situated. *Kimery v. Public Service Co. of Okla.,* 622 P.2d 1066 (Okl.1980). South Oklahoma City Hospital Trust has been granted no exclusive immunity; it succeeds to the identical status enjoyed by any and all public trusts "where a city, town, school district or county is a beneficiary."

Nor do I find any constitutionally prohibited "special" legislation involved in this case.

I would affirm the trial court's order dismissing the action for failure to give the statutorily required notice.

I am authorized to state that Justices HODGES, LAVENDER, and HARGRAVE join this dissent.