James C. FOWLER, Individually and as Administrator and Personal Representative of the Estate of Effie A. Fowler, Deceased, Appellant,

v.

NORMAN MUNICIPAL HOSPITAL, an Oklahoma trust; John R. Christiansen, M.D., Inc., an Oklahoma corporation, Appellees.

No. 71168.

Supreme Court of Oklahoma.

March 26, 1991.

Rehearing Denied May 14 and 29, 1991.

Jack B. Sellers Law Associates, Inc. by Jack B. Sellers and Joe A. Moore, Sapulpa, and Pence, Housley & Anthony by Roger O. Housley, Norman, for appellant.

Foliart, Huff, Ottaway & Caldwell by Glen D. Huff and James L. Hill, Oklahoma City, for appellee Norman Mun. Hosp.

Short Barnes Wiggins Margo & Adler by Robert C. Margo and Randall L. Sewell, Oklahoma City, for appellees John R. Christiansen, M.D. and John R. Christiansen, M.D. Inc.

Oklahoma Mun. League, Inc. by Diane Pedicord and Sue Ann Nicely, Oklahoma City, for amicus curiae.

HODGES, Vice Chief Justice.

The material facts of this case are undisputed. On December 13, 1983, James Fowler (plaintiff/appellant) called Dr. Christiansen (defendant/appellee), about his wife, Effie A. Fowler. Dr. Christiansen

had been treating her for several months and was aware that she needed supplemental oxygen. Dr. Christiansen's office directed Fowler to take his wife to the emergency entrance of Norman Municipal Hospital (Norman Hospital).

Upon arrival at the hospital, Fowler processed his wife's admission which took about 45 minutes. During this time, she was taken to her room where Nurse Caraway assessed her and found her to be conscious and responsive to questions. When Fowler finished the admission's process, he went to his wife's hospital room and found that she was not receiving supplemental oxygen. Nurse Caraway ordered a respiratory therapist to begin administering supplemental oxygen. Dr. Christiansen had not yet been contacted and had not issued any orders to the hospital. At least 45 minutes lapsed after Fowler's wife arrived at the Norman hospital before the supplemental oxygen was administered.

On December 15, 1983, Fowler's wife died. On March 29, 1984, Fowler filed a Petition and Notice of Claim with the City

of Norman (City) pursuant to section 156 of the Governmental Tort Claims Act (Act).[1] The claim was denied on June 29, 1984. On September 6, 1985, Fowler filed a law suit which was dismissed without prejudice on July 21, 1986.[2] Then on July 16, 1987, Fowler filed suit against both Dr. Christiansen and the Norman Hospital. The Norman Hospital filed a motion for summary judgment which was sustained. The trial court also sustained Dr. Christiansen's demurrer to the evidence.

Fowler appealed both rulings. The Court of Appeals held that the trial court did not err in sustaining Dr. Christiansen's demurrer but erred as a matter of law in sustaining the Norman Hospital's motion for summary judgment. Both Fowler and the Norman Hospital have filed petitions for certiorari.

## I. Norman Municipal Hospital's Petition for Certiorari

■ The first issue is whether defendant/appellee, Norman Hospital, is a political subdivision for purposes of the Act.[3] If

1. Okla.Stat. tit. 51, § 156 (1981) provides:

A. Any person having a claim against the state or a political subdivision within the scope of this act shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages....

2. Okla.Stat. tit. 12, § 100 (1981) provides:

If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

3. Okla.Stat. tit. 51, § 152(6) (1981) provides:

"Political subdivision" means:

.   .   .   .   .

d. a public trust where a city, town, school district or county is a beneficiary;
and all their institutions, instrumentalities or agencies.
In 1984, the Legislature amended section 152 to provide:
8. "Political subdivision" means:

.   .   .   .   .

d. a public trust where a city, town, school district or county is a beneficiary, provided, that for the purposes of this act, a public trust shall not include a hospital operating under a trust authority.
Okla.Stat. tit. 51, § 152(8) (Supp.1984)(effective Oct. 1, 1985). Again in 1987, the Legislature amended section 152 to provide:
8. "Political subdivision" means:

.   .   .   .   .

d. a public trust where the sole beneficiary or beneficiaries are a city, town, school district or county. For purposes of the Governmental Tort Claims Act, a public trust shall include a municipal hospital created pursuant to Section 30–101 et seq. of Title 11 of the Oklahoma Statutes, a county hospital created pursuant to Section 781 et seq. of Title 19 of the Oklahoma Statutes, or is created pursuant to a joint agreement between such governing authorities, that is operated for the public benefit by a public trust created pursuant to Section 176 et seq. of Title 60 of the Oklahoma Statutes and managed by a governing board appointed or elected by the municipality, county, or both, who exercises control of the hospital, subject to the approval of the governing body of the municipality, county, or both, provided, this subparagraph shall not apply to hospitals or trusts which purchase advertising or which belong to organizations which purchase advertising, in which public

the Hospital is a political subdivision, claims must be brought against it within 180 days after the denial of the claim pursuant to section 157(B)[4] of the Act. If the hospital is not a political subdivision, then section 157(B) is not applicable, and the claim must be brought within two years after the injury occurred.[5]

Under Rule 13 of the Rules for District Courts,[6] a court is to grant summary judgment if the moving party shows there is no dispute of any material fact. The moving party must propose "material facts" as to which [he] contends no genuine issue exists and the reasons why summary judgment should be granted.[7] Then the adverse party must submit "a concise written statement of the material facts as to which [the party] contend[s] a genuine issue exists and the reasons for denying the motion."[8] Both parties must support their positions of the facts with evidentiary material such as affidavits, depositions, and admissions. All facts and inferences are to be viewed in the light most favorable to the non-moving party. On appeal, this Court will review the motion and response thereto *de novo*.[9] We will not review any evidentiary material that was not before the trial judge.[10]

The Hospital argues that the Court of Appeals erred in determining that the Hospital is not a political subdivision as defined by section 152 and, therefore, does not fall within the protections afforded by the Act.[11] We discussed this same issue in *Roberts v. South Okla. City Hosp. Trust*.[12] In *Roberts*, the defendant, South Oklahoma

City Hospital, argued that it was a political subdivision as defined by section 152 of the Act; therefore, the plaintiff's cause of action was barred by the one year limitations period of section 156(D) (sic) of the Act. We found that the South Oklahoma City Hospital Trust was not being conducted for the public benefit and was, thus, an "illusory" trust, not a true political subdivision.[13]

The factors which lead to the conclusion that South Oklahoma City Hospital was not a political subdivision for purposes of the Act were: (1) the hospital was managed by South Community Hospital Management Corporation; (2) the bank account used by the management corporation was in the name of South Community Hospital; (3) business was conducted in the name of South Community Hospital; (4) the city did not approve hospital rules and regulations, staffing decisions, or day-to-day operations; (5) the hospital promoted a private image in its day-to-day operations; (6) fund drives were held in the hospital's name; (7) the hospital chose its own insurance carrier; (8) there was no direct benefit to the city; (9) the hospital did not receive money from the city; (10) the hospital did not deposit any money into the city treasury; and (11) the hospital operated as a private business without interference by or accountability to the city. The trust agreement was merely a "method of financing the construction of the hospital." The hospital simply did not put patients on notice that it purported to

---

funds have been used, in any media the purpose of which is to influence legislation on the civil justice system or to advocate support for or opposition to a candidate for public office....
Okla.Stat. tit. 51, § 152(8) (Supp.1987).
Because the 1984 and 1987 amendments became effective after the cause of action in the present case arose, they are not controlling statutes in this case.

**4.** Okla.Stat. tit. 51 § 157(B) (1981) provides:

B. No action for any cause arising under this act shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section.

**5.** Okla.Stat. tit. 12, § 1053(A) (1981).

**6.** Okla.Stat. tit. 12, ch. 2, app., rule 13(e) (1981).

**7.** *Id.* at rule 13(a).

**8.** *Id.* at rule 13(b).

**9.** *See Ross v. City of Shawnee*, 683 P.2d 535 (Okla.1984).

**10.** *See Id.* at rule 13(b).

**11.** Our determination in this opinion of the status of the Norman Municipal Hospital is only for the purpose of determining whether that hospital is a political subdivision entitled to the protections of the Act.

**12.** 742 P.2d 1077 (Okla.1986).

**13.** *Id.* at 1080.

be a political subdivision.[14]

In the case at bar, the documents attached to the motion for summary judgment, the response, and the reply show that Norman Hospital was not a true political subdivision and not entitled to the protections of the Act. Profits from the Norman Hospital did not go into the city treasury but instead were reinvested in the hospital. The city could not dictate who was hired or fired nor could it exercise any authority or control over any employee of the Norman Hospital. The hospital was self-operating and self-sufficient without financial aid from the city. The operation of the hospital was not subject to the city's approval. Additionally, in the present case, the city did not investigate or handle any claims against the hospital. Any claim against the hospital which was filed with the city was forwarded to the hospital; the city did not plan financially for any outlay because of claims against the hospital.

In rebuttal the Norman Hospital tendered the deposition of the hospital administrator which shows that the board of trustees of the Norman Hospital was appointed by the Mayor with approval of the Norman City Council. The Norman Hospital sent monthly financial reports to the Norman City Council for the council's information, funding with government bonds had to be approved by the Norman City Council and a general vote of the people, and the city manager was an ex officio member of the Norman Hospital Board of Trustees. The hospital failed to rebut the motion with supporting evidentiary material that the hospital did not retain virtually complete control over its funds and operation. The City of Norman exercised very little authority over the operation of the Norman Hospital.

The arrangement between the City of Norman and the Norman Hospital was similar to the arrangement in *Roberts*. In both cases the hospitals failed to put their patients on notice that they were purporting to be political subdivisions. Both hospitals retained control of their finances and operation, neither of which were subject to approval by the municipalities. Like in *Roberts*, we are drawn to the conclusion that there was no real intent to transfer. We determined in *Roberts* that the hospital was not entitled to the protection of the Act as a political subdivision. Likewise, we find the Norman Municipal Hospital is not protected by the Act. Thus, the applicable statute of limitations period is two years.[15]

## II.  Fowler's Petition for Certiorari

■ As stated earlier, Fowler filed a Petition for Certiorari on the issue of whether the trial court erred in sustaining Dr. Christiansen's demurrer at the end of plaintiff's evidence. We hold that the trial court did err in sustaining Dr. Christiansen's demurrer.

On a demurrer to the plaintiff's evidence, the court must "accept as true all of the plaintiff's evidence and reasonable inferences therefrom while disregarding conflicting evidence favorable to the defendant."[16] "[A] demurrer to the evidence admits every fact which the evidence tends to prove in the slightest degree and all reasonable and logical inferences and conclusions therefrom."[17] "When a plaintiff presents evidence *tending to* prove the essential elements of the cause of action, the claim will survive a demurrer."[18]

Fowler presented evidence tending to prove that Dr. Christiansen was negligent and that the doctor's negligence caused the death of Fowler's wife.[19] Fowler presented sufficient evidence to withstand a demurrer.

Under the standard for a demurrer to the plaintiff's evidence, the following facts, to

14.  *Id.* at 1082.

15.  Okla.Stat. tit. 12, § 1053(A) (1981).

16.  *Blood v. R & R Engineering, Inc.*, 769 P.2d 144, 145 (Okla.1989).

17.  *Davis v. Town of Cashion*, 562 P.2d 854, 855 (Okla.1977).

18.  *Blood*, 769 P.2d at 145.

19.  *See Sloan v. Owen*, 579 P.2d 812 (Okla.1977).

which there was testimony or evidence, must be taken as true. Dr. Christiansen's file showed that he had been treating Fowler's wife for more than a year before her death for pulmonary problems and knew of her need for oxygen. Mr. Fowler testified that when he contacted Dr. Christiansen's office just prior to the death, the office personnel instructed Fowler to take his wife to the hospital. Dr. Christiansen was not at the hospital when Fowler's wife arrived. Dr. Christiansen failed to direct the hospital to administer oxygen to Fowler's wife immediately upon her arrival at the hospital. Fowler's wife was not placed on oxygen for at least 45 minutes after arrival. Fowler's medical expert testified that Dr. Christiansen failed "to give Effie A. Fowler the necessary, ordinary, reasonable medical care" when he failed to transmit orders for oxygen to the hospital before the patient arrived. The expert also testified that the delay in administering the oxygen probably caused Fowler's wife's death. The autopsy report showed that Fowler's wife died from lack of oxygen. While there was no direct evidence that the oxygen would have been administered immediately upon Fowler's wife's arrival at the emergency room of the hospital if Dr. Christiansen had ordered oxygen before her arrival, there was sufficient evidence from which a jury could infer that Dr. Christiansen's inaction caused the death of Fowler's wife. Accepting as true all the evidence favorable to plaintiff, Fowler, and all the inferences therefrom, the demurrer to the plaintiff's evidence should not have been sustained.

The trial court's order granting summary judgment and sustaining the demurrer is reversed and the cause is remanded.

CERTIORARI PREVIOUSLY GRANTED. COURT OF APPEALS' OPINION VACATED. TRIAL COURT REVERSED AND CAUSE REMANDED.

OPALA, C.J., and LAVENDER, DOOLIN, ALMA WILSON and KAUGER, JJ., concur.

SUMMERS, J., concurs in part I by reason of stare decisis, and concurs in part II.

SIMMS and HARGRAVE, JJ., dissent.