2002 OK CIV APP 104

**Mark OFFIELD, o/b/o Joseph OFFIELD, Deceased, Plaintiff/Appellant,**

v.

**PARK VIEW HOSPITAL, Park View Ambulance Service, and Kathy Gunter, P.A., Defendants/Appellees,**

**Clinton Strong, M.D., Mercy Health Center, Inc., Paul Orcutt, M.D., and Lonnie Lamprich, M.D., Defendants.**

No. 95,662.

Court of Civil Appeals of Oklahoma, Division No. 1.

July 12, 2002.

Certiorari Denied Oct. 15, 2002.

Michael Brady, Louis Falesetti, Brady, Schaulat & Falesetti, Oklahoma City, for Appellant.

A. Scott Johnson, Chris L. Fox, Johnson, Hanan & Heron, Oklahoma City, for Appellees.

LARRY JOPLIN, Vice–Chief J.

¶ 1   Plaintiff/Appellant Mark Offield, o/b/o Joseph Offield, Deceased (Plaintiff), seeks review of the trial court's order granting the

motion for summary judgment of Defendants/Appellees Park View Hospital (PVH), Park View Ambulance Service (PVAS), and Kathy Gunter, P.A. (Gunter, or collectively with PVH and PVAS, Defendants) on Plaintiff's claims of medical negligence and violation of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. §§ 1395dd, et seq. (EMTALA), arising from the death of Decedent. In this accelerated review proceeding, Plaintiff asserts the trial court erred in granting judgment to Defendants because (1) Hospital is not a public trust hospital entitled to invoke the protections of the Oklahoma Governmental Tort Claims Act (OGTCA or Act), 51 O.S. § 151, et seq., (2) Hospital waived any protection of the OGTCA, under § 152(8)(d), by contribution to political advocacy, and (3) the OGTCA does not insulate Defendants from liability on EMTALA claims. Having reviewed the record, however, we find no error as alleged and hold the order of the trial court should be affirmed.

¶ 2 The evidentiary materials on summary judgment show that on the morning of March 4, 1997, Decedent tripped, fell and struck his head on the floor of the garage at his residence. Decedent was transported to the emergency room of PVH by private vehicle, arriving at about 11:45 a.m. PVH staff examined Decedent, obtained x-rays and, at about 12:30 p.m., discharged Decedent to return home.

¶ 3 Upon returning home, however, Decedent experienced vomiting, and around 2:00 p.m., was transported back to the emergency room of PVH by PVAS. PVH staff obtained a CT scan of Decedent's head, showing an acute right subdural hematoma. Decedent was transferred to Defendant Mercy Hospital, where he died the following day.

¶ 4 On March 4, 1999, Plaintiff commenced the instant action, alleging Defendants' negligence and violations of EMTALA caused Decedent's death. Defendants answered, denying generally and specifically the allegations of Plaintiff's petition, and asserted, among other defenses, immunity from liability under the OGTCA and full compliance with the standards of EMTALA.

¶ 5 In April 2000, Defendants filed a motion for summary judgment, and attached evidentiary materials demonstrating the facts we have recounted. Defendants also submitted evidentiary materials argued to show creation of PVH as a public trust hospital, PVAS as part of PVH, Gunter as an employee of PVH acting within the scope of her employment, and Defendants' immunity from liability under the OGTCA.

¶ 6 Plaintiff responded, objecting to summary judgment, and offered evidentiary materials argued to show that PVH was a public trust hospital in form only, and not entitled to OGTCA protections. *See, Roberts v. South Community Hospital Trust,* 1986 OK 52, 742 P.2d 1077. Plaintiff also submitted evidentiary materials argued to show PVH's membership in the Oklahoma and American Hospital Associations (OHA and AHA, respectively), trade groups using members' dues to forward a political agenda, and asserted that PVH—even if a public trust hospital—consequently enjoyed none of the OGTCA's protections pursuant to § 152(8)(d). Plaintiff further offered evidentiary materials argued to show Defendants' failure to properly examine, evaluate and treat Decedent, either initially or subsequently prior to his transfer to Defendant Mercy Hospital, constituting negligence and violating EMTALA.

¶ 7 Upon a continuance to permit additional discovery and consideration of the submitted materials, the trial court held:

1. [PVH] is a "public trust" ... [;]

2. [PVH] is a "political subdivision" as defined under [51 O.S.] § 152(8)(d) and thus, protected by the [OGTCA] ... [;]

3. [PVH's] status as a "political subdivision" under the [OGTCA] is *not* effected [sic] by the fact that it is a member of the [OHA] and/or [AHA]. Further, [OHA] and/or [AHA] have not conducted any acts and/or omissions which this Court finds excepts [PVH] as ... a "political subdivision" ... under ... § 152(8)(d)[;]

4. Plaintiff failed to provide Defendants with "notice of claims" as required by [51 O.S.] § 156 of the [OGTCA][;]

5. Plaintiff's federal EMTALA claim ... is encompassed under the "notice of claims" requirement of the [OGTCA]. 51

[O.S.] § 156. The "notice of claims" requirement ... of the [OGTCA] does not directly conflict with the two year statute of limitations [governing EMTALA claims][; and]

6. This Court finds the analysis in *Roberts v. South Community Hospital Trust,* [1986 OK 52,] 742 P.2d 1077 (Okla.1986), must be applied in conjunction with the Legislature's 1987 amendment to the definition of "political subdivision" (subsequent to [the] *Roberts* decision). Further, after taking into consideration both the applicable law and facts, this Court finds that [PVH] is a political subdivision protected by the OGTCA.

(Emphasis original.) The trial court consequently granted Defendants' motion for summary judgment, disposing of all of Plaintiff's claims against them.

¶ 8. Plaintiff subsequently filed an application for entry of a final appealable order pursuant to 12 O.S. § 994(A), which, over Defendants' objections, the trial court granted. Plaintiff then commenced the instant appeal, and the matter stands submitted to this Court for resolution on the trial court record.[1]

¶ 9 In the first substantive proposition of the petition in error, Plaintiff asserts the trial court erred in ruling that PVH is a public trust hospital. See, 51 O.S. § 152(8)(d); 60 O.S. § 176, et seq. In a related proposition, Plaintiff asserts the trial court erred in its application of the *Roberts* analysis to determine PVH's status as a protected "political subdivision" under the Act.

¶ 10 In *Roberts,* the Supreme Court held that a "true municipal hospital," "created and funded" pursuant to 11 O.S. § 30–101 et seq., is "an extension of and an agency of the municipality" entitled to a timely notice of claim under the Act.1986 OK 52, ¶ 8, 742 P.2d

at 1081. However, the Supreme Court in *Roberts* also held that a hospital "operating under only a mere trust authority," and "not being conducted as a trust for the public benefit ... is an illusory public trust, which [does not] qualify under [the Act] as a true political subdivision." 1986 OK 52, ¶ 7, 742 P.2d at 1080. In that inquiry, the Supreme Court focused on the administrative and fiscal relationship between the hospital and the municipality. *Roberts,* 1986 OK 52, ¶¶ 8, 10–11, 15, 742 P.2d at 1080, 1081, 1082, 1083. *See also, Kluver v. Weatherford Hospital Authority,* 1993 OK 85, ¶ 9, 859 P.2d 1081, 1083; *Fowler v. Norman Municipal Hospital,* 1991 OK 30, ¶ 8, 810 P.2d 822, 824. The controversy "concerning the hospital's status as a true public trust" "presents a question of law under *Roberts,*" "reviewable by a *de novo* standard and an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver,* 1993 OK 85, ¶ 14, 859 P.2d at 1084.

¶ 11 *Roberts* and its progeny concerned claims that arose when the Act either (1) defined "political subdivision" to include "public trusts" *without any specific reference* to hospitals, or (2) *expressly excluded* "hospitals operating under a trust authority" from the definition of "political subdivision." *See,* 51 O.S.1981 § 152(6)(d)[2]; 51 O.S. Supp.1984 § 152(8)(d).[3] Under these circumstances, there was good reason to inquire whether a hospital trust was illusory.

¶ 12 After *Roberts,*[4] however, the Oklahoma Legislature again amended the Act to *specifically include* municipal hospitals "operated for the public benefit by a public trust created pursuant to [60 O.S.] Section 176 et seq." within the definition of a "political subdivision." 51 O.S. Supp.1987

---

1. See, Rule 13(h), Rules for District Courts, 12 O.S. Supp.1993, Ch. 2, App., and Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. Supp. 1997, Ch. 15, App.

2. "'Political subdivision' means: ... a public trust where a city, town, school district or county is a beneficiary; and all their institutions, instrumentalities or agencies."

3. "'Political subdivision' means: ... a public trust where a city, town, school district or county is a beneficiary, provided, that for the purposes of this act, a public trust shall not include a hospital operating under a trust authority."

4. Opinion issued, July 22, 1986, rehearing denied Sept. 29, 1987.

§ 152(8)(d).[5] The 1987 amendment to § 152(8)(d) should accordingly be regarded as the Legislature's response to *Roberts* and evincing an intent to change the law. *Special Indem. Fund v. Archer*, 1993 OK 14, ¶ 11, 847 P.2d 791, 796, fn. 5[6]; *Huff v. State*, 1988 OK 118, ¶ 4, 764 P.2d 183, 185[7]; *Irwin v. Irwin*, 1965 OK 145, ¶ 11, 433 P.2d 931, 934[8]; *Magnolia Pipe Line Co. v. Oklahoma Tax Commission*, 1946 OK 113, ¶ 11, 167 P.2d 884, 888.[9]

¶ 13 In this respect, by amended § 152(8)(d), the Legislature clearly defined "public trust" and "political subdivision" to include a municipal hospital, county hospital, or a joint municipal/county hospital "that is operated for the public benefit by a public trust created pursuant to [60 O.S.] § 176 et seq. . . . and managed by a governing board appointed or elected by the municipality, county, or both, who exercises control of the hospital, subject to the approval of the governing body of the municipality, county, or both." A public trust so managed is presumed to exist for the public benefit. 60 O.S. § 176.1(A), (B).

¶ 14 Reading amended § 152(8)(d) of the Act together with § 176.1, we therefore hold by statutory definition, the Legislature consequently limited the "political subdivision"

inquiry to whether the charged municipal or county hospital is: (1) operated for the public benefit by a public trust created pursuant to 60 O.S. § 176, et seq.; and (2) managed and controlled by a governing board appointed by and answerable to the superintending municipal or county authority. As a question of law, we therefore do not believe the *Roberts* analysis properly applies in this case.

■ ¶ 15 On summary judgment below, Defendants submitted authorities and uncontroverted evidentiary materials showing PVH's initial creation, as well as subsequent organization and operation, as a municipal hospital for the use and benefit of the people of El Reno. Defendants also submitted authorities and uncontroverted evidentiary materials showing acts of the superintending El Reno City Council: approving a public trust indenture to create the "Park View Hospital of El Reno Authority" with the power to issue obligations and provide funds to operate PVH for the use and benefit of the municipality and its citizens in stated compliance with 60 O.S. § 176, et seq.; and, appointing a functioning, governing board of trustees—including the mayor and answering to the City Council—with the right, power and duty to manage and control PVH's fiscal

---

5. " 'Political subdivision' means: . . . a public trust where the sole beneficiary or beneficiaries are a city, town, school district or county. For purposes of the Governmental Tort Claims Act, a public trust shall include a municipal hospital created pursuant to Section 30–101 et seq. of Title 11 of the Oklahoma Statutes, a county hospital created pursuant to Section 781 et seq. of Title 19 of the Oklahoma Statutes, or is created pursuant to a joint agreement between such governing authorities, that is operated for the public benefit by a public trust created pursuant to Section 176 et seq. of Title 60 of the Oklahoma Statutes and managed by a governing board appointed or elected by the municipality, county, or both, who exercises control of the hospital, subject to the approval of the governing body of the municipality, county, or both, provided, this subparagraph shall not apply to hospitals or trusts which purchase advertising or which belong to organizations which purchase advertising, in which public funds have been used, in any media the purpose of which is to influence legislation on the civil justice system or to advocate support for or opposition to a candidate for public office. . . . . " (Effective, November 1, 1987.)

6. "[W]here a former statute is clear or its meaning has been judicially determined, legislative

amendment may reasonably indicate a legislative intent to alter the law. *Special Indemnity Fund v. Figgins*, [1992 OK 59, ¶ 8,] 831 P.2d 1379, 1382 (Okla.1992); *Irwin v. Irwin*, [1965 OK 145, ¶ 11,] 433 P.2d 931, 934 (Okla.1965)."

7. "[W]hen amending a statute the legislature is presumed to be familiar with the then extant judicial construction that is in force."

8. " '[A] change of phraseology from that of the original act . . . raise[s] the presumption that a change of meaning was also intended.' "

9. "Where a statute is amended the Legislature may have intended either, (1) to effect a change in the existing law, or (2) to clarify that which was previously doubtful. Which purpose was intended by a particular amendment is to be determined to some extent from the circumstances surrounding its enactment. Where the former statute was clear, or where its meaning had been judicially determined, the amendment may reasonably indicate that the intention of the legislature was to alter the law. . . . " (Citations omitted.)

and other affairs separate and independent of the affairs of the municipality. 60 O.S. §§ 176, 176.1. In the face of these uncontroverted facts, we hold the trial court did not err in finding PVH to be a "public trust" and "political subdivision" under § 152(8)(d).

¶ 16 In the second, third and fourth substantive propositions, Plaintiff asserts the trial court erred in holding PVH had not shed its immunity from liability under the Act. Here, Plaintiff points to the evidence of PVH's memberships in the OHA and AHA, organizations arguably using its members' dues to engage in political advocacy, and divesting PVH of the Act's protections under the specific terms of § 152(8)(d). In this respect, § 152(8)(d) indeed excludes from the definition of a protected "political subdivision" "hospitals or trusts which purchase advertising or which belong to organizations which purchase advertising, in which public funds have been used, in any media the purpose of which is to influence legislation on the civil justice system or to advocate support for or opposition to a candidate for public office, . . . ."

¶ 17 In the present case, PVH admitted its dues-paying membership in the AHA and OHA. However, according to the affidavits of the PVH administrator and OHA director, no public money had been used to purchase advertising in any media either to influence legislation or to advocate for or against any candidates for public office. In opposition to summary judgment, Plaintiff offered the affidavits of the Director of the Oklahoma Trial Lawyers Association, and a researcher for the American Trial Lawyers Association, argued to show use of OHA and AHA monies, derived wholly or partly from member dues, by those organizations to purchase advertising either to influence legislation or to advocate support for/opposition to candidates for public office.

¶ 18 On this evidence, the trial court concluded PVH's "status as a political subdivision [was] not affected by" its memberships in OHA or AHA, and that neither OHA nor AHA "conducted any acts and/or omissions which excepts [PVH] as . . . a 'political subdivision' " under the Act. As the issues have been framed, we must consequently determine whether, by adoption of § 152(8)(d), the Oklahoma Legislature intended to remove a public trust hospital from the Act's protections where a public trust hospital's membership dues to a trade association are arguably used by the trade association to purchase advertising aimed at influencing legislation or the election of political candidates.

¶ 19 As a matter of statutory construction, we are guided by the plain language of the statute. *Greenlease–Ledterman, Inc. v. Hawkins,* 1947 OK 323, ¶ 0, 186 P.2d 318.[10] "The cardinal rule of statutory construction, to which all other rules are subordinate, is to ascertain the intention of the Legislature . . ., and this should ordinarily be done by a consideration of the language of the statute, . . . ." *Seventeen Hundred Peoria, Inc., v. City of Tulsa,* 1966 OK 155, ¶ 12, 422 P.2d 840, 843; *City of Bristow ex rel. Hedges v. Groom,* 1944 OK 223, ¶ 11, 151 P.2d 936, 940.

¶ 20 While we find no precedential guidance in the construction of § 152(8)(d), the plain language of the statute convinces us that the Legislature intended to divest a public trust hospital of the Act's "political subdivision" protection only when the public trust hospital steps outside its public service role as a health care provider and directly into the political arena. That is, we construe § 152(8)(d) to evince our Legislature's intent that so long as a public trust hospital conducts itself only as a hospital and health care provider, its status as a protected "political subdivision" under the Act remains unchanged. However, it is equally clear to us from the plain language of the statute that where a public trust hospital purposefully abandons its role as a health care provider to join in a political debate by the purchase of politically-motivated advertising, either directly or through an agent employed for that reason, the Legislature intended that a public trust hospital should no longer enjoy its status as a protected "political subdivision" under the Act.

10. "Where the language of a statute or ordinance is plain and unambiguous and its meaning clear and no occasion exists for the application of rules of construction, the statute will be accorded the meaning as expressed by the language therein employed."

¶ 21 Having so construed § 152(8)(d), we have reviewed the evidence offered in support of and opposition to summary judgment, and we concede that the evidentiary materials adduced arguably support a conclusion that part of PVH's membership dues to the AHA and OHA may have been used for political purposes. However, we find no evidence supporting an inference that PVH, by its dues-paying membership in AHA or OHA, purposefully embarked on some politically-motivated agenda to actively affect legislation or the election of public officers sympathetic to the health-care industry by the purchase, directly or through its hospital association memberships, of advertising in any media. Absent evidence supporting a conclusion of such direct participation in the political process, we hold the trial court did not err in granting summary judgment to PVH as a protected "political subdivision" under the Act.

¶ 22 In the final substantive proposition of error, Plaintiff asserts a claim based on Defendants' alleged violation of EMTALA falls outside the protections of the Act. On this issue below, Plaintiff argued that the Act protects political subdivisions only from tort liability, not against the strict liability provisions of EMTALA. *See, e.g., Griffith v. Mt. Carmel Medical Center*, 842 F.Supp. 1359 (D.Kan.1994).[11]

¶ 23 We disagree. Recovery under EMTALA is specifically limited by state law. 42 U.S.C. § 1395dd(d)(2)(A).[12] A failure to give a notice of claim as required by state law bars a claim under EMTALA. *Draper v. Chiapuzio*, 755 F.Supp. 331 (D.Or.1991),[13] aff'd, 9 F.3d 1391 (9th Cir.1993).[14] Inasmuch as the evidentiary materials uncontrovertedly reveal Plaintiff's failure to timely comply with the Act's notice provisions, we

conclude the trial court did not err in holding Plaintiff's EMTALA claim likewise barred.

¶ 24 The order of the trial court granting the motion for summary judgment of Defendants should be and is therefore AFFIRMED.

JONES, J. and BUETTNER, J., concur.

11. Held: hospital's liability under EMTALA not grounded upon tort concepts, rather, on hospital's violation of federal statute making hospital strictly liable for any personal harm that directly results from that violation.

12. "Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospi-

tal is located, and such equitable relief as is appropriate."

13. For failure to give notice of claim as required by state tort-claims act, held, plaintiffs' "claims under the laws of the State of Oregon and [EMTALA] are time-barred." 755 F.Supp. at 333.

14. "[A] plaintiff who waits more than one year to give the required notice under the state statute can no longer comply with both state [tort claim] and federal [EMTALA] law." 9 F.3d at 1393.